Mamo Pittoni, J.
This is an application pursuant to article 78 of the Civil Practice Act for an order canceling the award of a contract for a refuse incinerator by the Village of Garden City to Nichols Engineering & Research Corporation, and directing that the contract be awarded to the petitioner.
The petitioner was the lowest bidder on the contract and Nichols was the second lowest bidder. The petitioner claims that the granting of the contract to Nichols was in violation of section 103 of the General Municipal Law which requires an award to be made “ to the lowest responsible bidder
The bids were opened on December 11, 1961, but no awards were made at that time. On December 14, 1961, at a hearing of the full Board of Trustees of the village, the following persons appeared and were heard: William Raisch, Consulting Engineer to the village and Bernard Gorman, Superintendent of Public Works of the village, who spoke against accepting the petitioner’s bid, and Albert Foreman, attorney for the petitioner, and Carl Gohlke, a taxpayer, both of whom spoke on behalf of the petitioner. Trustee McKenna stated that he had many discussions with Raisch and Gorman and that it was his feeling that the petitioner’s bid should be rejected.
Raisch and Gorman were called upon to state their reasons for their recommendations against accepting the petitioner’s bid. They said that the petitioner did not give the required answers to the questionnaire in that in each case the answer stated the name of the company that manufactured the particular piece of equipment, and then added the words “ or equal ”, that this was contrary to the purpose of the questionnaire, and that this made it difficult for the village to check and also gave the petitioner the freedom of substituting any other piece of equipment that it felt was “ or equal ”. They further stated that the specifications required bidders to have regular end *89 neering staffs on their permanent payrolls, but that the petitioner had no such permanent engineering staff, that the petitioner called on outside engineers to do their work when the occasion demanded, and that none of the petitioner’s principals was an engineer. The specifications as to quality, experience and workmanship, they explained, required that the bidder show at least five plants of comparative size that the bidder had built as a prime contractor, but that the petitioner could show only two as a prime contractor, and that those were not of complete plants. Further investigation by Baisch and Gorman, including conversations with the petitioner, disclosed that the petitioner generally operated as a contractor to other firms.
Attorney Foreman, in turn, argued that the petitioner was the low bidder, that to award the contract to a high bidder would be a waste of taxpayers’ money, and that it was illegal to insist that the exact name of the equipment manufacturer be set forth. He also said that the petitioner was qualified because it had just finished a two and a half million installation and that it had done some similar work on other jobs in New York City.
Taxpayer Gohlke argued that a lot of jobs that he knew of were done through subcontractors and that he felt that the award should be given to the petitioner because he was the lowest bidder.
After hearing these four persons the board also had made a part of the record and considered an extensive written report made by consulting engineer Baisch.
The board then conferred and unanimously voted to reject the petitioner’s bid.
The board then went on to consider the bid of the next lowest bidder, that of Nichols. Baisch and Gorman were called upon to state their recommendations. They recommended that Nichols be awarded the contract because their investigation showed long experience and activity in this line of work. They stated that it was an outstanding company in its field, that it had many years of experience, that it had done other work for Baisch, that Nichols had always performed well, that the Nichols bid named specific manufacturers for the required equipment instead of mentioning the alternate “ or equal”, and that the references of Nichols were good. The board then unanimously voted to award the contract to Nichols.
The key word in section 103 of the General Municipal Law and in the decision of the board is “ responsible ”, Without question it means “ accountable ” or “ reliable ”. The board came to its decision that Nichols was the lowest responsible bidder after listening to witnesses and after considering the *90 report ,of its consulting engineer, who was designated or appointed to seek facts as to the responsibility of the bidders involved. The board concluded that upon the facts in hand Nichols was a responsible bidder and the petitioner was not.
The board used a common-sense approach and method in making1 its determination, and this court cannot say that it was wrong in the method chosen; nor will it define or limit the standards the board should have used as guides so long as the method chosen was reasonable.
The burden of proof was on the petitioner to show that it was a responsible bidder. It cannot be said that the board abused its discretion in determining that the petitioner was not a responsible bidder and that Nichols was, so long as there was a reasonable and plausible basis for its determination (Matter of Kaelber v. Sahm, 281 App. Div. 980-981, affd. 305 N. Y. 858). In the Kaelber case the court stated as follows: “ The issue is not whether the determination of the town board was wise, but whether there was a reasonable and plausible basis for such determination. (Matter of Tuller Constr. Co. v. Lyon, 257 N. Y. 206; Matter of Cestone Bros. v. Solowinski, 276 App. Div. 970; 10 McQuillin on Municipal Corporations [3d ed.], § 29.73; Picone v. City of New York, 176 Misc. 967; Matter of Kniska v. Splain, 201 Misc. 729.) The duty devolved upon the town board (Town Law, § 197) to award contracts to the lowest responsible formal bidder requires consideration not only of the price bid but also of the qualifications of the bidders to perform the work proposed. (10 McQuillin on Municipal Corporations [3d ed.], § 29.73.) In the absence of any finding of fraud on the part of the members of the town board, it is to be presumed that they honestly determined that there was risk in letting the contract to the petitioner.”
This case is not in conflict with Matter of Hodge & Hammond v. Burns (23 Misc 2d 318). The record in that case showed that the Town Board had accepted without question the report of an engineer and without exercising its own judgment. The court in the Hodge case said (p. 320): “ The court does not intend to define or to limit the criteria to be used as guides before an award be made; but some inquiry should have been made with respect to the past performance * * *. Here, the views of the engineer were adopted without question, and he had made up his mind prior to the publication of the notice to bid.” In the present case the board appointed an investigating agent, its own consulting engineer, to investigate and report, and then at the December 14,1961 meeting fully considered the testimony of witnesses and the report of the consulting engineer; it then *91 deliberated thereon and decided that Nichols had satisfied the requirements of a responsible bidder, but that the petitioner had not. Here, the board did not accept without question the recommendation of its consulting engineer. The board clearly exercised its own best judgment.
Accordingly, it cannot be said that the board was arbitrary, capricious or unreasonable in making its decision (Matter of Haskel-Gilroy v. Young, 20 Misc 2d 294, affd. 10 A D 2d 629, motion for leave to appeal denied 10 A D 2d 717). The petition is, therefore, dismissed.