*257 OPINION OF THE COURT
Arthur S. Hirsch, J.
The Board of Education of the City of New York (Board), a defendant herein, contracts with private bus companies for the transportation of children living at prescribed distances from school and for all handicapped children. The present contracts expire in June, 1979. The Board has issued bid specifications for new contracts, serial Nos. 0065 and 0070. Plaintiff Varsity Transit, Inc. (Varsity), is the largest bus company who presently holds a contract for transportation of school children. It employs members of defendant Amalgamated Transit Union (Union) as school bus drivers and matrons. Despite a collective bargaining agreement between their Union and Varsity, these employees have gone on strike, undoubtedly as an indication of their anger at certain changes in the Board’s new contract proposals that may affect them adversely. Varsity, together with Pioneer Bus Company (Pioneer), another company presently in contract with the Board, has joined with the Union in strenuously objecting to the changed contract provisions.
Varsity has initiated legal action in Queens County brought on by an order to show cause (1) to enjoin the Union and its officers from continuing a work stoppage and (2) to preliminarily and permanently enjoin the Board from accepting or opening any bids on contract proposals Nos. 0065 and 0070, on grounds that said proposals are violative of the following laws: section 220 of the Labor Law; section 17 of article I of the New York State Constitution; and section Z51-2.3 of the Administrative Code of the City of New York. Plaintiff further contends that the Board’s prior contractual practice constitutes an estoppel, prohibiting the Board from changing requirements in its new contracts.
Pioneer had earlier initiated its own action in this county, based on the identical questions of law and fact as are found in the Varsity action. It argued a similar motion for injunctive relief, the court reserving its decision. The Varsity action in Queens County was consolidated with the Pioneer and a Board of Education proceeding in Kings County. Pioneer has asked to intervene in the instant Varsity action. During oral argument on the Varsity motion, Pioneer was granted that right. In order to avoid unnecessary redundancy, this decision shall cover the motions of both plaintiffs Varsity and Pioneer and that of defendant Board of Education.
*258 The third motion before the court is that of the Board to dismiss Varsity’s complaint on grounds that plaintiff has failed to state a cause of action.
The changes in the proposed contract specifications that underlie the controversy are pertinent to this case. The previous contract provided, among other things, that: (a) private bus companies must pay their employees at the same hourly rate as New York City Transit Authority employees; (b) private bus companies must pay their employees for eight hours in a 10 Vi-hour day; (c) private bus companies must pay their employees the same pension and welfare benefits enjoyed by the majority of personnel presently employed in transporting pupils or the same pension and welfare benefits enjoyed by New York City Transit Authority employees, whichever is less; and (d) employees of private bus companies who lose their jobs as a result of the loss of the contract by a previous contractor must be given priority in hiring according to seniority by any replacement contractor.
After a recent study to find means of reducing school transportation costs as mandated by the Legislature (Education Law, § 305, subd 14, par c, the Board was advised that these provisions cost the city approximately $10.39 million and their deletion would effectively open real competitive bidding by a larger spectrum of bidders. This would be accomplished in part by permitting the hiring of part-time employees, eliminating the need to employ drivers for eight hours when they are actually engaged in driving only half of that time.
These considerations convinced the Board to issue the new contract specifications, which do not include the afore-stated labor provisions.
Plaintiffs contend that the ommission of said provisions violates section 220 of the Labor Law, which requires that laborers, workmen or mechanics upon public works be paid wages equal to the prevailing rate of wages.
The specifications of the contracts for transportation of handicapped children raises a different issue. The previous contract included a provision requiring buses for the handicapped to have dual door openings on two sides of the motor vehicle, pursuant to section Z51-2.3 of the Administrative Code. This requirement has been deleted from the amended proposed specifications, and at a conference for prospective bidders, the Board indicated that it will attempt to have the *259 Legislature repeal or amend the dual door opening requirement. Plaintiffs accused the Board of giving prospective bidders the impression that, in the event the Board is not successful with the Legislature, it would still not insist upon dual door openings. The Board emphatically denies this allegation. Plaintiffs, who had purchased the more expensive dual door buses during the run of the previous contracts, contend that the omission of the clause requiring the dual door openings is violative of State and city laws for the safety of transporting handicapped children.
Pioneer, in its action, does not ask on this issue for an injunction against the Board on opening of bids as does Varsity. Rather, it requests that the Board be directed to issue an addendum to the specifications stating that all vehicles used for handicapped children should be equipped with dual door openings.
LABOR LAW AND NEW YORK STATE CONSTITUTION
Pursuant to the Labor Law, contracts with the State or municipalities must include provisions for wages to be paid to workers at the prevailing rate. The law pertains only to certain persons who are specified in the law. Subdivision 3 of section 220 of the Labor Law requires that: "The wages to be paid for a legal day’s work, as hereinbefore defined, to laborers, workmen or mechanics upon such public works, shall not be less than the prevailing rate of wages as hereinafter defined.” (Emphasis added.)
Section 17 of article I of the New York State Constitution provides that: "No laborer, workman or mechanic, in the employ of a contractor or subcontractor engaged in the performance of any public work, shall * * * be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used.”
This extends the coverage of section 220 to employees of contractors and subcontractors involved in public works.
The threshold question facing the court is whether bus operators and matrons are within the ambit of employees entitled to the protection of the Labor Law or the Constitution. The court thinks not.
An analysis of the Labor Law reveals that the legislators were interested in protecting that specific portion of the work *260 force which is involved in the construction, replacement, maintenance and repair of public works. It has long been established that this law does not blanket all workers who have some working contact with the city or agency or department of the city (Matter of Pinkwater v Joseph, 300 NY 729). Even with the most liberal construction, a bus driver or a matron in charge of children passengers is not a construction worker nor do they replace, maintain or repair public works or public work projects.
Plaintiff Varsity relies on two cases to buttress its contention that their employees come under section 220. In one, Schwartz v Board of Educ. (209 App Div 738), a 1924 Appellate Division, First Department case, the worker involved was a lineman electrician employed by the Board of Education. This employee was referred to as a "trained mechanic,” easily within the description of section 220. In a more recent case, Matter of Long Is. Light. Co. v Industrial Comr. (40 AD2d 1003), the Appellate Division, Second Department, extended coverage of section 220 of the Labor Law to employees engaged in the performance of contracts with the Town of Islip for the installation of street light standards. The work involved was contruction work, erecting street lights, which the court deemed to be a municipal function carrying out public work. This kind of work is a far cry from the work to be performed by the employees in the instant action.
The concomitant provisions of the Constitution are equally inapplicable to workers who are not among those whose protection is contemplated by the Labor Law.
Accordingly, the Board is not bound by law to include any provision setting a standard of wages or other labor clauses.
ADMINISTRATIVE CODE
Section Z51-2.3 of the Administrative Code provides: "All buses transporting handicapped children in the city of New York, after September 1, 1975, shall be equipped with dual opening doors so that doors shall open from no less than two sides of the motor vehicle.”
In proposed specifications on No. 0070 sent to prospective bidders for comment, the Board had included a clause pertaining to the door openings which it deleted from the amended proposed specifications. The second specifications did include, however, an omnibus preamble requiring that all vehicles to *261 be used in transportation operations must comply with all Federal, State and city laws and regulations applicable to the contract by the Board.
The question now confronting the court is whether the city is obliged to include, as it has done in the past, a specific requirement in regard to two-sided dual door openings on buses for the handicapped. Again, the answer to this question is in the negative.
The details of municipal administration are entrusted to various offices. It is not within the purview of the Supreme Court to assume a general supervisory power over the acts of the city, certainly not to supervise or regulate its work contract proposals and to do so would be contrary to the whole spirit and intent of our government.
It is uncontroverted that a contracting party, whether it be an individual or a municipality, may present an offering in any language it chooses. This is not to say that illegalities may be written into a contract, but neither is it mandatory to require wording that mirrors all the laws which may be applicable.
In the instant action, the Board contends that they eliminated the specific dual door clause upon learning that the manufacturer of school buses will not be able to supply a sufficient number of dual door buses by September, 1979. This would preclude bids from companies other than those who are now in contract with the Board, i.e., Pioneer and Varsity, who presently own dual door vehicles. The Board contends that they are seeking to have the Legislature amend the dual door requirement to eliminate this problem. Plaintiffs attribute a different motive to the deletion. Whatever the motive, the fact remains that bidders are put on notice that they must comply with all applicable laws. The contract as written is more flexible than the previous ones, allowing for the possibility of an amendment of the code, while still retaining all necessary safeguards in its omnibus law clause. Accordingly, the Board is not bound by law to include any specific clause reciting details of dual door openings.
ESTOPPEL
This court cannot seriously consider the argument that a municipality must remain constant in its contract work offering despite changing times and changing needs. It would be *262 contra to public policy for the court to place its imprimatur on such a misguided, static concept.
This city has suffered extended fiscal crisis. It has become all too clear that a permutation of the city’s spending policies must take place. Many necessary economic changes will strip fat from the city’s expenditures while others will cause unfortunate but unavoidable hardships to certain groups. It is the fervant hope of all that the mandated economies will be made sagaciously and with the appropriate sensitivity. However, be assured, the city must economize. The instant action, obviously predicated on one such proposed saving, is directly on point. The city cannot be tied into old contracts simply because "that is the way it used to be done.” The times require a bold and creative approach if we are to go forward as a viable and solvent city. Accordingly, the Board is not estopped from changing requirements in its new proposed contract specifications.
In light of the above, it is the finding of this court that plaintiff Varsity has failed on all counts to state a cause of action against defendant Board of Education and, accordingly, the second, third, fourth and fifth causes of action of the complaint of plaintiff Varsity are dismissed pursuant to CPLR 3211 (subd [a], par 7). Consequently, its motion to enjoin the Board from soliciting and opening bids on its contract proposals is denied.
Applying the same reasoning, the petition of plaintiff Pioneer, brought under CPLR article 78, is dismissed on grounds that petitioner has failed to state a cause of action. This automatically dismisses all the branches of Pioneer’s petition but the court, cognizant of the allegations of Varsity, Pioneer and other bus operators that misinformation was given to prospective bidders at a specifications conference, is concerned lest the Board, intentionally or unintentionally, mislead bidders. Therefore, on its own volition, the court directs the Board to refrain from advising prospective bidders that the Administrative Code pertaining to dual doors, if still in effect in September, 1979, will be ignored.
Finally, the court grants that part of plaintiff Varsity’s motion enjoining the Union and its officers from striking, picketing and breaching its contract with plaintiff.
The Union claims it has done none of the above and that the strike by its members is a "wildcat strike” which it did not instigate nor authorize. If this is so and the Union is *263 indeed innocent of wrongdoing, the court cannot see why it is then prejudiced by the restraining order which simply requires it to desist from striking, picketing, etc., the very acts it adamantly maintains it is at present not doing. The real problems in which the Union feels it has vital concern are collective bargaining issues and should be thrashed out in that forum. The court would like to believe that the Union has been acting in a. responsible manner and will continue to do so by controlling and restraining those of its members who allegedly have chosen violence rather than collective bargaining to solve their problems.