OPINION OF THE COURT
Arthur S. Kirsch, J.
There are three article 78 proceedings before this court. In each, petitioners are school bus companies seeking to obtain school transportation contracts from respondent, the Board of Education of the City of New York. In one of the proceedings, Kings Bay Bus Company, the original petitioner, having withdrawn, leaves petitioner-intervenor Spilka Bus Company to demand that respondent be enjoined from including any labor provisions set forth in an agreement between respondent and *3 the Amalgamated Transit Union, Local 1181-0161 (ATU) dated May 8, 1979 that were not included in contract specifications originally issued in February, 1979 and to enjoin respondent from including said labor provisions in any specifications for rebid proposals and, finally, to compel respondent to make awards to petitioners as apparent low bidders on the February specifications.
In the second proceeding, transferred from Queens County to Kings County, petitioners Avet Coach Corp. et al. and Spilka Bus Corp., which was permitted to join in this petition, seek relief similar to that requested in the first petition. The third article 78 petition varies from the two aforesaid petitions insofar as petitioners Logan Bus Company et al. and numerous intervenors seek an order compelling respondent to immediately award contracts to bus contractors who have indicated to respondent their willingness to accept the new labor provisions. They further seek to have respondent immediately award the five vehicles or fewer contracts which are not affected by the board of education/union agreement to all low bidders who have indicated to the board their willingness to accept these smaller contracts and, finally, to compel respondent to immediately rebid all transportation contracts which have not been accepted by contractors because of the inclusion of the new labor requirements. Cross motions have been made by respondent for an order dismissing all of the proceedings for failure to state a cause of action on grounds that petitioners have no right to compel the board to award contracts to them or any other bidders.
All three proceedings must be viewed against a background of events that occurred in New York City in the spring of 1979, affecting pupil transportation and transportation of handicapped children. In February, 1979, respondent board of education issued specifications for transportation contractors to commence in September, 1979 that did not include wage and hiring labor provisions which had been part of former contracts. It was the board of education’s stated belief that it would be able to achieve enormous savings if the labor clauses were omitted, as this would enable competing bus companies to hire nonunion help at part-time or reduced full-time wages and eliminate fringe benefit costs.
As has become evident, respondent’s plan was not well conceived. The threatened loss of 2,500 union jobs compelled the drivers of school buses and other employees, members of *4 ATU, to mount a wildcat strike, a massive work stoppage which crippled all transportation services for children living at distances from school and for handicapped pupils, who rely almost totally on special bus services. For 12 long weeks, the board of education not only suffered financial loss, but was unable to do its job of teaching these children who, in turn, were deprived of their right to be educated. Additionally, the board’s expectations of lowered costs did not materialize. There has been indication that the dollar amount in the competitive bidding for each school transportation contract, for various reasons, has been far in excess of that anticipated by respondents.
Attempts at solving the dilemma by negotiations failed and an impasse was reached.
Eventually, at a much later date, the parties reconsidered their static positions. The board of education had suffered a tremendous financial loss, the loss of State aid funding which is geared to student attendance and the loss of moneys expended in their futile attempt to obtain private or individual transportation for the children. The board finally entered into negotiations with the ATU and agreement was reached on wage compensation, welfare benefits and pension contributions, provisions which were to be included in all contracts commencing September, 1979, with the exception of contracts with companies providing service of five vehicles or fewer.
Respondent thereafter held a meeting with apparent lowest bidders on the earlier specifications and offered them the options of (1) accepting the new labor provisions, (2) submitting new bids at a time to be specified by respondent, or (3) contracting to provide transportation with five or fewer vehicles, with no labor provisions required. Many prospective contractors, petitioners among them, signed statements accepting the labor provisions and now demand that the board make its awards immediately so that they will be able to purchase vehicles in time for the fall school term.
Those among the petitioners who decided to limit their services to five or fewer vehicles claim that the board’s representative at the meeting stated contracts would be given to those companies which decided to accept the five or fewer contracts. Reliance on this statement was allegedly the basis for their decisions.
In oral argument, it was disclosed to the court that the *5 respondent will only award contracts for 200 buses in the "five or fewer” category. Contracts for 75 buses in this category have been awarded prior to submission of the instant petitions and there are willing contractors, petitioners among them, with a total of over 300 vehicles who are vying for these contracts. Respondent claims that the commitment made by contractors to limit vehicles to five or fewer merely made them available for those contracts, but that the determination as to which contractors would receive the award must be left to the discretion of the board, which will base its determination on certain criteria it has set.
Out of this imbroglio emerges a narrow legal issue: Does the board of education have the discretionary power to limit awards in any category and/or to reject bids received on any contract proposal and rebid them with different specifications?
Article 5-A of the General Municipal Law, Public Contracts, subdivision 1 of section 103 providing, among other things, for the advertising of public contracts involving an expenditure of more than $2,500 and for the award of said contracts to the lowest responsible bidder, includes the following language: "Such officer, board or agency may, in his or its discretion, reject all bids and readvertise for new bids in the manner provided by this section.”
The specifications contained in the original contract proposals issued in February, 1979 upon which petitioners bid, contained the following: "The Board of Education reserves the right to reject any or all bids.”
Dictates of public policy, as well as statutory law, require there be competitive bidding on all public contracts. At the same time, the law permits a board the discretion of selecting the lowest responsible bidder and it may do so based on any reasonable standards or criteria (see Matter of W. J. Gaskell, Inc. v Maslanka, 33 Misc 2d 88, 90). A court will not define or limit the standards nor second guess a determination of a board which has the statutory right (and in the instant case, the contractual right as well) of accepting or rejecting bids, providing there is a reasonable basis for its determination (Matter of Sanford Fire Apparatus Corp. v Board of Fire Comrs., Lysander-Cody Fire Dist., 81 Misc 2d 992, 996; Matter of W. J. Gaskell, Inc. v Maslanka, supra). "Responsible” is the key word in section 103 of the General Municipal Law, meaning accountable or reliable (Matter of W. J. Gaskell, Inc. v Maslanka, supra, at p 89). The board must be allowed to *6 assess its own needs and decide which contractors would be most responsible for the services required.
Favoritism, of course, will not be tolerated, but petitioners have not produced evidence of favoritism. There has been no showing of any one bidder being given an advantage over any other. All have been offered the same options. The problem of more supply than demand in the "five or fewer” category exists. However, it is not for a court to make selections. That task is the statutory duty of respondent.
Petitioners, who are the apparent lowest bidders on the "five or fewer” contracts and who have informed respondent that they will accept the contracts, contend that they were misled by respondent’s representative into believing that they would receive a contract if they agreed to accept it and that their reliance on his statement entitles them to be awarded said contract. The court disagrees. The board is not bound to make awards to all contractors who accept the minor contracts, regardless of any assurances the petitioners believed they received or did receive from an employee of the board (Matter of Sport Line Coach Corp., 77 NY St Dept Rep 103). The court will not interpose any judgment as to the number of contracts which would be better serviced by small companies and how many would benefit from the greater resources in equipment and manpower of larger companies. Again, this properly must be left to the discretion of the board of education.
The court has previously determined that the board of education, as a contracting party, may include or omit any clause or any language in its specifications for school bus contracts that it chooses (Varsity Tr. v Saporita, 98 Misc 2d 255).
After choosing to omit labor provisions from its specifications of February, 1979, the board has now decided that, in the public interest, the provisions should have been included. Where a board finds it omitted a specific requirement which it later determines is of essential importance and which must, for good reason, be included in its specifications, it may properly reject and readvertise bids (Matter of Gehrke, 78 NY St Dept Rep 6).
In the instant matter, the board has re-evaluated its priorities. In reassessing its losses, as well as the immeasurable loss of instruction to 10,000 students by the work stoppage and the potential cost to families of 2,500 experienced bus personnel, *7 many of whom would remain unemployed, the board has determined that labor clauses must be included in all contracts. Its offer to all apparent low bidders to accept said provisions or rebid was a sound exercise of discretion, and the court will not prohibit it from exercising its discretionary1 power (see Matter of De Bonis v Hudson Val. Community Coll., 55 AD2d 778, 779).
For the above reasons, the court finds that petitioners have no cognizable cause of action to compel respondent to award any contracts. Accordingly, all petitions in these proceedings are denied; respondent’s cross motion to dismiss for failure to state a cause of action is granted.
Petitioners’ demand that the board be compelled to make its awards or to rebid the remaining contract has become moot. A timetable to be acted upon almost immediately has been set by the board.