■ In the Matter of ACTION ELECTRICAL CONTRACTORS CO., INC., Petitioner, v HARRISON J. GOLDIN, as Comptroller of the City of New York, et al., Respondents. — Determination of the Comptroller, dated October 17, 1983, which, *inter alia,* found that petitioner had willfully violated subdivision 3 of section 220 of the Labor Law on two occasions, confirmed, without costs. ¶ In subdivision 3 of section 220 of the Labor Law the Legislature has required that supplements be paid to workmen. Undoubtedly, the Legislature realized that if cash payments were given to workmen in lieu of supplements, the cash payments could be quickly dissipated. The workmen would thus be left without any protection against future contingencies which might threaten their health or welfare. ¶ In light of the Legislature's policy embodied in subdivision 3 of section 220 of the Labor Law, it would be improper for this court to develop a rule of "substantial compliance" or "substituted compliance." Our vote of confirmance is supported by the only two cases that have directly explored this subject matter (*Matter of Skyway Roofing v County of Rensselaer,* 79 AD2d 1078, mot for lv to app den 53 NY2d 606; *Pilot Mechanical Corp. v Carrol,* 94 Misc 2d 437). ¶ The record contains substantial evidence to support the administrative determination that Action committed violations in failing (i) to provide supplemental benefits and (ii) to maintain records. The other issues raised in Action's brief are merely mentioned in its petition. There was no proof submitted in the record to show that any of those other issues had merit or warranted development at a trial or hearing. ¶ For the reasons stated, we would confirm. Concur — Murphy, P. J., Sullivan and Asch, JJ.

Ross and Silverman, JJ., dissent in part in a memorandum by Silverman, J., as follows: This is a CPLR article 78 proceeding by petitioner Action Electrical Contractors Co., Inc. (Action) (a) to annul the determination of respondent the Comptroller of the City of New York (Comptroller) that Action had willfully violated section 220 of the Labor Law twice by failing to provide prevailing supplemental benefits to laborers and electricians, and that Action had failed to maintain records on contracts as required by subdivision 3-a of section 220 of the Labor Law; and (b) to direct respondent New York City Housing Authority (NYCHA) and its Chairman to award Action as the lowest responsible bidder a contract with respect to certain electrical installation at Redfern Houses, Queens. ¶ We would grant the petition to the extent of annulling the determination of the Comptroller, but would dismiss the petition as against the Housing Authority. ¶ The effect of the Comptroller's determination that Action had twice willfully failed to provide supplements was to render Action ineligible to submit a bid on or be awarded any public work contract with the State, any municipal corporation, or public body (public agency) for a period of five years (Labor Law, § 220-b, subd 3, par b). ¶ Subdivision 3 of section 220 of the Labor Law requires contractors with any public agency to pay laborers, workmen or mechanics upon such public works not less than the prevailing rate *of wages,* and to provide such employees "supplements" in accordance with the prevailing practices in the locality. Supplements are defined as "all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not 'wages' within the

meaning of the law, including, but not limited to, health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay and life insurance." (Labor Law, § 220, subd 5, par b.) ¶ The Comptroller of the City of New York as "the fiscal officer" responsible (Labor Law, § 220, subd 5, par e) has determined that while Action paid the prevailing wages, it failed to provide prevailing supplements. ¶ Action is a member of the United Construction Contractors Association, which has a collective bargaining agreement with Local 363 of the Teamsters Union. Apparently most of the major electrical contractors in New York City belong to associations which have collective bargaining agreements with Local 3 of the International Brotherhood of Electrical Workers. ¶ This case must be considered in the context and against the background of the continuing dispute between Local 3 and Local 363 wherein it has been charged and found by some courts that Local 3 is engaged in an effort "to expropriate for itself, electrical work being performed by the Teamsters [Local 363], thus giving Local 3 a monopoly over such work." (*National Labor Relations Bd. v Local 3, Int. Brotherhood of Elec. Workers,* 542 F2d 860, 865; see, also, *Bradley Co. v Union,* 325 US 797.) ¶ The present prevailing wage and supplement proceeding was precipitated by a complaint forwarded to the Comptroller by a member of Local 3's Joint Industry Board. ¶ The Comptroller, as we have said, found that Action was paying the prevailing rate of wages but it was not providing the prevailing supplements. These supplements are a package of welfare benefits. Each of the two collective bargaining agreements contains a provision for such package. Not unnaturally the packages for welfare benefits in the two collective bargaining agreements are not the same. Because Local 3 apparently represents the large majority of the electricians involved, the Comptroller has taken the provisions of that agreement as the prevailing wages and supplements which must be provided by all contractors doing public work in the city. ¶ The Comptroller's "Schedule of Prevailing Rates of Wages and Supplemental Benefits" lists the supplements by initials, which apparently correspond to the various welfare benefits and funds provided for in the Local 3 contract, giving a dollar cost per day for each. The Comptroller has found the benefits provided for by the Local 363 contract not to be comparable or equivalent to those provided for by the Local 3 contract. Further the Comptroller has found there are some funds or benefits, e.g., the "Additional Security Benefit Fund" provided for in the Local 3 contract, which do not appear among the Local 363 benefits, at least under that name. ¶ As a practical matter, it is impossible in this industry for any moderate-sized firm to comply with the requirements of supplemental welfare benefits except through union welfare funds. As Action's association is signed up with Local 363, to whose welfare fund Action contributes, Action and its employees must look to the welfare fund and benefits set up by the Local 363 bargaining agreement. They cannot look to the Local 3 bargaining agreement, for those provisions will not benefit Action's employees. ¶ It appears that the amounts contributed by Action to Local 363 for supplemental benefits are less than those required under the Comptroller's schedule and the Local 3 agreement. In an effort to meet the standards, Action did the best it could: it added up the cost of supplemental benefits as set forth in the Comptroller's schedule, compared that with the amounts it was paying to Local 363 for supplemental benefits and paid the excess in cash to its employees. (In the case of the occasional "laborers" employed, where there was no applicable collective bargaining agreement, Action paid to those laborers in cash the full amount of the benefit as required by the Comptroller's schedule.) It is thus clear that Action was not trying to obtain any advantage for itself by paying less than the Comptroller's standard for supplemental benefits; it was not cutting its costs to give itself an unfair bidding advantage over Local 3 contractors; it was giving

the full benefits of the supplements — so far as translatable into cash — to its employees. Indeed, the Comptroller found that the damage suffered by the employees, i.e., the value of the benefits they ought to have received but did not, was offset by the additional cash paid by Action to its employees, so that the employees suffered no monetary damage. ¶ However, the Comptroller holds that payments in cash cannot substitute for provision of supplemental benefits. He bases this on the fact that supplements are defined in the statute as remuneration "paid in any medium other than cash" (Labor Law, § 220, subd 5, par b). We do not think it necessarily follows that a cash substitute paid by an employer, where the welfare benefit is not available, constitutes a willful violation. We note that the statute requires the Comptroller to determine "the *amount* of such supplement" (Labor Law, § 220, subd 5, par c; emphasis added), which suggests that such supplements are translatable into a cash equivalent, and the Comptroller's schedule, as we have said, does state a cash amount with respect to each supplemental benefit. ¶ Further, it appears not to be contradicted that the State Industrial Commissioner (now the State Commissioner of Labor), who is the fiscal officer administering the same statute outside New York City as the Comptroller does within New York City (Labor Law, § 220, subd 5, par e), holds that supplemental benefits may be paid in cash, cash and benefits, or just benefits, so long as the total cost equals the benefits required by the prevailing practice. ¶ The Comptroller, by finding two willful violations (two contracts), has excluded Action — and as a practical matter has excluded all contractors who do not have a collective bargaining agreement with Local 3 — from doing electrical work for the city and public agencies within the city. On its face, this appears to us to be so undesirable a result, not clearly required by statute, as to be arbitrary and capricious. At a minimum, as it clearly appears that Action is doing its best to comply in the situation in which it finds itself, Action's violations are not willful. ¶ The Comptroller has also held that Action has failed to maintain records on each contract as required by subdivision 3-a of section 220 of the Labor Law. This finding is not supported by substantial evidence. The Comptroller's witness conceded that Action's records accurately reflected the payments made by Action to Local 363 and its employees, and it was on this basis indeed that the Comptroller found Action did pay the prevailing rate of wages. The finding of a failure to maintain records is apparently based solely on a failure to produce booklets detailing the supplemental benefits of Local 363. That is not what the statute requires. ¶ Accordingly, we would annul the Comptroller's findings that Action willfully violated section 220 of the New York State Labor Law twice; that it failed to maintain records on each contract; and that Action should pay a penalty of $1,500 to the City of New York. ¶ *The claim against New York City Housing Authority.* ¶ With respect to the claim against the New York City Housing Authority the situation is somewhat different. The NYCHA does not make its own determinations as to whether the contractors have complied with the prevailing wage and supplemental practices. That is done by the appropriate fiscal officer, the Comptroller of the City of New York. Having been informed by the Comptroller that a particular contractor has twice willfully violated the statute, NYCHA was not acting arbitrarily or capriciously in declining to consider such contractor for work to be done for NYCHA; it was merely obeying the dictates of section 220-b (subd 3, par b) of the Labor Law. ¶ Accordingly, we agree that the petition should be dismissed against the New York City Housing Authority.