■ In the Matter of DADSON PLUMBING CORPORATION, Petitioner, v HARRISON J. GOLDIN, as Comptroller of the City of New York, et al., Respondents. — In this transferred CPLR article 78 proceeding to review and vacate a determination of the respondent Comptroller of the City of New York, dated October 31, 1983, finding that petitioner had violated section 220 of the Labor Law in five instances by failing to pay the prevailing wage and directing petitioner to pay $1,716.30 to the now former employee involved and assessing a penalty of $150, the proceeding is dismissed, without costs or disbursements, and said determination confirmed.

Petitioner, a small, family owned plumbing corporation, was charged with a willful violation of section 220 of the Labor Law on five separate and distinct public work contracts with the Board of Education in failing to pay the prevailing wage and supplemental benefits to an employee in the year 1982.

At the hearing petitioner's defense centered on its labeling of the employee involved, Randy Lane, as a "gofer", a job title not appearing on the schedule of wages and benefits. Thus, petitioner claimed, it could compensate Mr. Lane at a rate substantially lower than any of the rates appearing on the schedule. The log books of the custodial engineers at the public schools involved disclosed that of the 41 dates on which petitioner was present at these schools working on the five separate contracts, on 14 of these occasions three men were present at the site. Petitioner's accountant told the Comptroller's claims examiner that petitioner's work force consisted of two of its principals and Mr. Lane. The claims examiner personally observed Mr. Lane working at one of the public school work sites. Based upon petitioner's own description of Mr. Lane's duties, which entailed

unskilled physical labor, and the claims examiner's own observations, it is obvious that Mr. Lane was a laborer, not a "gofer". Instead of paying Mr. Lane $11.80 per hour for the first half of 1982 and $12.95 for the second half, the prevailing wage for laborers, and providing supplemental benefits, petitioner initially paid him $30 per day. This was subsequently increased to $180 for a four-day week. Mr. Lane was never enrolled in any supplemental benefits plan. Petitioner admitted that it used apprenticeship rates as a guideline in setting Mr. Lane's salary. It also conceded that Mr. Lane was never registered as an apprentice with the New York State Department of Labor, as required. Therefore, he could not be compensated as an apprentice. According to the claims examiner's calculations $1,716.30 was due Mr. Lane.

We find that the Comptroller's determination sustaining the charges is amply supported by the oral and documentary evidence introduced at the hearing, including petitioner's payroll records and admissions by its secretary and accountant, and must be confirmed. Petitioner objects to the use of hearsay at the hearing. Hearsay evidence, to the limited extent it was used, is clearly admissible in administrative proceedings, particularly where, as here, it is proven to be reliable and its relevance and probative value are established. (*Matter of Zimmerman v Board of Regents,* 31 AD2d 560, 561; *Matter of Erdman v Ingraham,* 28 AD2d 5.) The finding of willfulness is also supported. Once the prevailing wage rate and benefits are determined, the Comptroller's office issues a schedule of wages and benefits which is annexed to the work specifications; the schedule is thereby incorporated into the terms of the contract. The schedule clearly states in bold letters that, pursuant to section 220 of the Labor Law, the wages and benefits due employees on public work projects are those in effect at the time the work is performed. By law, the schedule of wages and benefits is updated every six months and the new schedule is published in the City Record. The contract also states that the new schedules are published in the City Record. Thus, by signing the contract, the contractor obligates himself to pay the schedule wages in effect at the time the work is performed. This court has previously considered and rejected the argument that violations of two separate contracts disposed of at one administrative hearing do not constitute distinct violations of section 220 of the Labor Law. (*Matter of Weissman Co. v Goldin,* 95 AD2d 983, mot for lv to app dsmd 61 NY2d 641.)

Finally, we take occasion to note that in cases of this type the stress is on the harshness of the penalty of automatic exclusion from bidding on public works for a five-year period. What is

overlooked is that it is through the exploitation of his employees that a contractor who refuses to pay the prevailing wage is able to achieve a competitive edge in bidding on these contracts. Concur — Sullivan, Asch, Fein and Milonas, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I would grant the petition and annul the determination.

At issue is the question of whether there was a willful violation of section 220 of the Labor Law more than twice in a six-year period.

We have heretofore considered the question most recently (*Matter of Action Elec. Contrs. Co. v Goldin*, 102 AD2d 732).

I would conclude that there was not a rational basis for the determination of a willful violation.

The petitioner is a small plumbing corporation, family owned, consisting of two licensed plumbers, and has engaged exclusively in the performance of public works contracts with the Board of Education of the City of New York.

In 1982, the petitioner hired an unskilled neighbor who expressed an interest in learning how to become a plumber. The young man, according to the petitioner, was hired as a "gofer" and his duties consisted of picking up materials, getting meals and coffee, occasionally removing debris and having the opportunity of watching the work so that he could learn.

In 1982, the petitioner had five contracts which were subject to subdivision 3 of section 220 of the Labor Law calling for a "prevailing rate of wages".

Complaints were made that the young man was a "laborer" and entitled to the prevailing wage for that category. While he was more like an "apprentice", he had not been so registered and, therefore, could not be counted as such.

Evidence was presented that the log books from the custodial engineers at the five schools under contract indicated that on 14 of 41 occasions there were three men present at the site, being the two principals of the petitioner plus one other. It was assumed that the young man was the one other although the direct evidence was only that he had been seen performing work at one of the five sites. Originally, the young man was paid $30 a day, which was increased to $180 for a four-day week, which, by normal standards for an unskilled "gofer", would be adequate.

The log-book records of the custodians at the school, not having been offered in evidence as records kept in the ordinary course of business, were hearsay and not admissible. Moreover, except in one instance, there was no direct evidence of who the third man was.

There was no evidence that the so-called violation had been called to the attention of the petitioner in order to make the deviation willful. Besides, the law requires two instances of failure to comply. The five contracts involve the same young man and ought to be considered as one instance.

The result of the determination here is to exclude a qualified organization from being able to submit a bid on a public work contract for a period of five years. On the flimsy basis heretofore discussed, this is a detriment both to the petitioner and also to the public which loses the opportunity of having an additional bidder for the work involved.