In the Matter of Tenalp Construction Corporation, Petitioner, v Lillian Roberts, as New York State Commissioner of Labor, Respondent.

Second Department, September 26, 1988

## APPEARANCES OF COUNSEL

*Lava, Levine and Sambur (Eliot S. Levine* on the brief), for petitioner.

*Robert Abrams, Attorney-General (Patricia M. Smith, Jane Lauer Barker* and *Adeline Liu* of counsel), for respondent.

## OPINION OF THE COURT

BALLETTA, J.

This proceeding raises a question of first impression of whether the New York State Commissioner of Labor may require a contractor on a public work project to pay an employee who is performing both supervisory and nonsupervisory duties the prevailing wage rate under Labor Law § 220 for that portion of the employee's time that he was doing nonsupervisory work. We now answer that question in the affirmative.

On May 1, 1984, the Sachem Central School District, Holbrook, Suffolk County, entered into a public work contract with the petitioner Tenalp Construction Corp. (hereinafter Tenalp) for the construction of an addition to Sachem High School South. Tenalp hired Steven Sauter to act as a superintendent/carpenter on the contract. Sauter, who had previous experience as a carpenter but not as a supervisor, worked for Tenalp for the duration of the project, i.e., from May 11, 1984, until December 26, 1984, and was paid approximately $550 per week. Tenalp did not keep any breakdown of Sauter's hours according to classification of work performed.

As part of his job, Sauter staked out the addition (i.e., placed stakes in the ground to approximate the work area), worked with an excavator to keep the work area dry, unloaded and removed roof trusses, performed alterations to the building frame by installing reinforcements around the top plate of the walls, installed roof trusses and braced and nailed them, roofed the corridor connecting the addition to the main school building, put up siding, rebuilt window framing not built to specifications by a subcontractor, caulked windows, and installed doors, door frames, door and classroom hardware and fixtures and wall paneling.

At the same time, Sauter supervised Tenalp's other employ-

ees who performed the same work he did. The other employees numbered no more than 10 (including carpenters and laborers) at any one time. As the project neared completion, Tenalp employees did not work as often, and, although Sauter occasionally had 1 or 2 men to supervise, he often worked alone on Tenalp's behalf. During the entire period, Sauter gave out work assignments to the men, but did not keep track of the hours or days they worked; he was responsible for only his own time sheet. While he often checked on the work of others, he did not spend time "walking from one end of the building to another looking at people" since he "was told to do other work".

In addition, Sauter was the designated liaison between Tenalp, its subcontractors, and school district personnel, which entailed discussing scheduling with the subcontractors and any other problems encountered with Tenalp's president, Alvin Levine. He was also Tenalp's "on-site person" at the project, and had to attend "job meetings", which were held more frequently at the beginning of the project and less toward the end, to keep track of what was being done and what had yet to be done.

In January 1985 Sauter filed a claim for wage and supplement underpayments with the New York State Department of Labor (hereinafter the DOL), claiming that he had not been paid at the prevailing rate of wages for his duties as a carpenter. As a contractor on a public works project, under Labor Law § 220 Tenalp was required to pay its workers according to the prevailing wage schedule for the school project under Labor Law § 220. Sauter's claim was investigated by the DOL, and a hearing was held on May 13 and 14, 1986, before Eugene P. Myers, Assistant Commissioner of Labor, in accordance with Labor Law § 220 (3-c) (2).

Assistant Commissioner Myers issued a report adopted in all respects by the New York State Commissioner of Labor in an order and determination dated October 23, 1986. The Commissioner determined that Tenalp had willfully underpaid Sauter a total of $5,734.50 for the work he had performed on the Sachem project. Tenalp was thereupon ordered to pay this amount to Sauter, plus interest. A civil penalty of $900 was also imposed. The Commissioner also determined that Sauter had spent 60% of his time doing carpentry work and 40% of his time supervising.

Tenalp commenced this proceeding in this court under

Labor Law § 220 (8), claiming (1) that Sauter is exempt from the prevailing wage law, and (2) that the Commissioner's findings are not supported by the substantial evidence.

The New York State Constitution provides that no laborer, workman or mechanic in the employ of a contractor or subcontractor in the performance of public work may be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the State where the public work is to be situated, erected or used (NY Const, art I, § 17). This constitutional imperative is reflected in Labor Law § 220 (3), which provides that "[t]he wages to be paid for a legal day's work * * * to laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages" and that all contracts for public works "shall contain a provision that each laborer, workman or mechanic, employed by such contractor, subcontractor or other person about or upon such public work, shall be paid the wages herein provided".

The statutory requirement that workers on public works projects be paid at the prevailing rate finds its origins in Laws of 1894 (ch 622), which was subsequently reenacted as section 3 of the former Labor Law of 1897 (L 1897, ch 415) and the Labor Law of 1909 (L 1909, ch 36). In the 1921 revision of the Labor Law, the substance of section 3 of the former Labor Law became Labor Law § 220 (3) (L 1921, ch 50). The statute was intended for the direct benefit of laborers on public projects *(Fata v Healy Co.,* 289 NY 401, 405), in order to insure that they receive an adequate wage *(Brang Co. v State Univ. Constr. Fund,* 47 AD2d 178). "Doubtless the Legislature in enacting and in amending section 220 of the Labor Law, had in mind, primarily and insistently, the need of providing protection against possible injustice on the part of the contractors in their dealing with their laborers, workmen and mechanics. That appears clearly from the language of the section and all its subdivisions" *(Matter of Gaston v Taylor,* 274 NY 359, 364). Moreover, the statute is to be liberally construed in order to carry out its beneficial purposes *(Bucci v Village of Port Chester,* 22 NY2d 195). "The present statute is an attempt by the State to hold its territorial subdivisions to a standard of social justice in their dealings with laborers, workmen and mechanics. It is to be interpreted with the degree of liberality essential to the attainment of the end in view" *(Austin v City of New York,* 258 NY 113, 117). The

protection of the wage rate is a legitimate State concern *(Meaott Constr. Corp. v Ross,* 76 AD2d 137, 140).

Tenalp contends herein that the law is unclear as to whether the prevailing wage rate must be paid to a person such as Sauter who performs different types of duties (i.e., supervisory and nonsupervisory) at the same time. It argues that under Federal statutes such as the Fair Labor Standards Act of 1938 (29 USC § 213 *et seq.),* Sauter's activities would be considered exempt from the wage requirements and that, by analogy, Sauter should be exempt from the requirements of Labor Law § 220. This argument must be rejected.

Under Labor Law § 220, when a company is working on a public project (such as the Sachem School addition herein), it must pay its workers and laborers the prevailing wage rate. Obviously, carpenters are included within the protected class. "An analysis of the Labor Law reveals that the legislators were interested in protecting that specific portion of the work force which is involved in the construction, replacement, maintenance and repair of public works" *(Varsity Tr. v Saporita,* 98 Misc 2d 255, 259-260, *affd* 71 AD2d 643, *affd* 48 NY2d 767). Job titles are not controlling. A contractor subject to the provisions of Labor Law § 220 cannot avoid or circumvent the protection afforded to those workers covered by the law by bestowing job titles instead of adequate pay. Rather, "[t]he pivotal question is the nature of the work actually performed" *(Matter of Kelly v Beame,* 15 NY2d 103, 109; *see also, Matter of Dadson Plumbing Corp. v Goldin,* 104 AD2d 346, *mod on other grounds* 66 NY2d 713; 1936 Opns Atty Gen 344). The determination that a particular undertaking should fall within a particular job classification is a matter within the expertise of the New York State Department of Labor *(see, Matter of Nelson's Lamp Lighters v Roberts,* 136 AD2d 810; Labor Law § 220).

In *Austin v City of New York (supra,* at 115-116), the Court of Appeals determined that a man who worked as both a foreman and an ironworker was a "workman" covered by Labor Law § 220. Chief Judge Cardozo noted:

"The question is whether the plaintiff is a 'laborer, workman or mechanic' within the meaning of this statute. If he is, he has been underpaid, and the judgment which was rendered in his favor for a balance conceded to be due must be increased accordingly.

"The plaintiff was a bridgeman and riveter, and a member

of the Iron Workers' Union. He did not cease to be a bridge-man or riveter, or to be employed in that trade, when as-signed to act as foreman. He was one of a gang of workmen, though he was charged with special duties. He held the men to their job, and 'when necessary, jumped in and helped them.' He was exposed to nearly all the risks that cause the occupation of a bridgeman or riveter to be attended with exceeding hazard. He did not take himself out of his calling by becoming an overseer too.

"We think a man so employed must be held to be a work-man 'if we take words in their plain popular meaning, as they should be taken here' (HOLMES, J., in *United States* v. *Kirby Lumber Co.,* 284 U. S. 1, 3.) His duties, though they put him in a grade above his fellows, were so close akin to theirs, so predominantly physical in content and attendant risks, that he was still in the same *genus,* the broadly inclusive class of 'workmen,' though, perhaps, in a different species. The trade or occupation of a bridgeman or riveter is plainly the sort of service that the statute was designed to help. *If the plaintiff, while serving as a foreman, was still within the trade, he was still within the statute. There is no magic in the word fore-man. Whether it stands for a workman or for something else cannot be known in advance as a matter of dictionary defini-tion, without knowledge or heed of the conditions of the job (Surace* v. *Danna,* 248 N. Y. 18, 21). The foremen in the *Stryker* case *[Matter of Stryker,* 158 NY 526] had charge of departments in a factory, and were paid a monthly salary. The foreman in this case was a member of a union of workers, assigned to a gang, and sharing its activities and perils" (emphasis added).

The court in *Austin v City of New York (supra,* at 117) then concluded that the "aim of the statute would surely be thwarted" if the petitioner were not deemed to be a workman within the meaning of the prevailing wage law.

Applying this reasoning, it is clear that Sauter was within the prevailing wage statute. Sauter did not cease to be a carpenter merely because he supervised the work of other carpenters. Like the petitioner in *Austin (supra),* Sauter was a member of a crew of workers, sharing its activities and perils. Although Sauter assumed some supervisory functions on be-half of Tenalp at the school project worksite, his duties, as in *Austin,* remained predominantly physical in nature and he often "when necessary, jumped in and helped" his men.

The case of *Matter of Wright Metal* (283 NY 47), relied upon by Tenalp, is not to the contrary. In *Wright Metal,* the court determined that a factory superintendent was not a mechanic, workingman or laborer for purposes of Labor Law former § 196. However, unlike the superintendent in *Wright Metal,* Sauter spent the majority of his time engaged in the physical work of a carpenter.

Tenalp's reliance upon the Federal Fair Labor Standards Act (29 USC § 213 *et seq.)* is also misplaced. The Federal statute, unlike the prevailing wage law under consideration in the instant case, contains exemptions for various classifications of work, including supervisory work *(see also,* 29 CFR 541.1 *et seq.).* In any event, even under the Federal statute and the applicable regulations, employees who perform exempt and nonexempt work are still covered by the statute. Thus, in *Cramer v Roman Iron Works* (NYLJ, June 20, 1966, at 19, col 1 [Sup Ct, Nassau County, Gulotta, J.]), a foreman who performed a great deal of manual work consuming more than 20% of his working time was deemed to be a "working foreman" or "working supervisor" who regularly performed production work or other work unrelated or only remotely related to his supervisory activities and therefore was covered by the statute *(see also, Berlin v Eimer & Amend,* 269 App Div 302, *affd* 295 NY 809; *Schanck v Lehigh Val. R. R.,* 52 NYS2d 491).

Labor Law § 220 provides that the prevailing wage rate shall be paid to "laborers, workmen or mechanics", without defining the same, and, unlike the Federal wage and hour statutes, does not contain a specific exemption for those employees who are deemed to be "supervisors". The parties herein have not directed this court's attention to any cases expressly exempting a "supervisor" or "foreman" from the provisions of Labor Law § 220. However, the language used by the Court of Appeals in the *Austin* case *(supra),* while not expressly so stating, clearly implies that an employee in a truly supervisory position would be exempt from the prevailing wage requirements. Whether an employee is a supervisor is a factual determination to be made based on the circumstances of the job.

Accordingly, we hold that the Commissioner did not err in holding that Sauter was covered by Labor Law § 220. As his work was of a type clearly covered by the statute, and as the statute "is to be interpreted with the degree of liberality

essential to the attainment of the end in view" *(Austin v City of New York, supra,* at 117), he cannot be excluded merely because he performed some supervisory functions in addition to his duties as a carpenter.

Tenalp also argues that the Commissioner's determination was not based upon substantial evidence. However, a review of the record reveals that the Commissioner's determination is supported by substantial evidence *(see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 181-182). The testimony of Sauter, substantiated by that of the two school officials who were on the worksite an average of three times a day for up to an hour at a time and who testified that they observed Sauter performing carpentry duties, is enough to support the Commissioner's findings. Furthermore, the testimony of the three subcontractors who gave evidence on the petitioner's behalf, only one of whom visited the work site regularly, does not contradict the determination.

In this case, the petitioner stipulated that it was aware of the prevailing wage statute and the prevailing rates of pay. Thus, the petitioner, an experienced public works contractor, knew or should have known it was obligated to pay Sauter as a carpenter *(see, Gross Plumbing & Heating Co. v Department of Labor,* 133 AD2d 524). Accordingly, the Commissioner properly determined that the petitioner's failure to so pay Sauter was a willful violation of the statute *(see, Matter of Cam-Ful Indus.,* 128 AD2d 1006, 1007), and the determination should be confirmed and the proceeding dismissed on the merits.

RUBIN, J. P., KOOPER and SULLIVAN, JJ., concur.

Adjudged that the determination is confirmed and the proceeding is dismissed on the merits, with costs.