■ In the Matter of MID HUDSON PAM CORPORATION et al., Petitioners, v THOMAS F. HARTNETT, as Commissioner of Labor, et al., Respondents. (And Another Related Proceeding.)— Weiss, J. Proceedings pursuant to CPLR article 78 (initiated in this court pursuant to Labor Law §§ 220, 220-b) to review two determinations of respondent Commissioner of Labor which ordered petitioners to pay back wages and civil fines and prohibited petitioners from bidding on future public works projects.

In one proceeding petitioners, Mid Hudson Pam Corporation as general contractor and Whitaft Corporation as a subcontractor, seek review of an April 19, 1988 determination of respondent Commissioner of Labor which found that Whitaft, as a subcontractor, had willfully failed to pay the required rate of wages and supplements on a public works project with Marlboro Central School District in Ulster County. In the other proceeding, Mid Hudson seeks review of an August 8, 1988 determination which found that Mid Hudson was directly involved in similar violations on the same project.

Mid Hudson and Whitaft are closely related corporations sharing common ownership, executives, administrative personnel and offices. During a routine inspection, a wage investigator with the Department of Labor's Bureau of Public Work requested payroll records. The computerized records produced by petitioners proved inadequate and not in compliance with required statutory standards. Petitioners' executive officer prepared an analysis of the payroll in order to reconstruct the necessary information. Specifically, the document purported to

show that payments entered in the taxable adjustment column (hereinafter TAC) represented payment to employees of the difference between petitioners' regular wages and the required prevailing wages. In reliance upon this document, an initial determination of underpayment was made.

Subsequently, the wage investigator learned of more widespread violations, including information that the TAC payments were not related to prevailing wages, but were for vacation, holiday and sick pay, and travel time. The investigation also concluded that there were more workers employed on the public work project than were shown on petitioners' payrolls relating to that project. Hearings were conducted and determinations issued in each case. In the first case, denominated rate case A, the Commissioner's August 8, 1988 order required Mid Hudson to pay $3,097.56 in wages and $851.82 as interest to nine employees, and imposed a civil penalty of $764.38. In the second case, denominated rate case B, the Commissioner's order dated April 19, 1988 required petitioners to pay $31,012.97 in wages and $7,759.52 interest to 35 employees, plus a penalty of $6,205.59. These CPLR article 78 proceedings were commenced seeking annulment of the two determinations.

Preliminarily, we note that petitioners did not directly challenge the finding that the payroll records were maintained in a poor, loose and noncompliant manner (see, Labor Law § 220 [3-a]) and did not indicate specifically what the TAC payments comprised. The Commissioner disallowed any use of the TAC payments toward wages. Several employees testified that the TAC payments were not for payment of prevailing wages. Although petitioners' president testified to the contrary, he lacked records to support his testimony and on cross-examination admitted that the TAC payments were used for other purposes. Such conflict merely presented a question of credibility for resolution by the Hearing Officer, which, once resolved against petitioners, provides substantial evidence to support the Commissioner's determinations (see, Matter of Berenhaus v Ward, 70 NY2d 436, 443; see also, 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 180; Matter of Zeihm v City of Buffalo, 90 AD2d 677, 678, affd 59 NY2d 757). The disallowance of the TAC moneys toward payment of prevailing wages was entirely appropriate (see, Matter of Blades & Sons v Roberts, 136 AD2d 926, 927, lv denied 72 NY2d 803).

The determinations are challenged primarily as being unsupported by substantial evidence. Petitioners focus upon the

testimony of the wage investigator as not being competent or creditable by emphasizing that he lacked an adequate contemporarily made log and records. Indeed, he was unable to recollect some specifics of the investigation and did acknowledge some errors during his testimony which petitioners argue rendered the proof unbelievable. While we agree that substantial evidence does not result from surmise, conjecture or speculation *(300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra)*, examination of the record shows that much more is present here. By persistent investigative work the investigator was able to compile a list of names of persons believed to have worked on the project. Four employees testified that most of the persons on the investigator's list did in fact work at Marlboro. Two other employees filed written complaints with the Department of Labor and identified additional employees who worked but whose names did not appear on the payroll records. The investigator testified that he interviewed others on the telephone who also worked on the Marlboro roof and was able to compile schedules of the days and number of hours these people worked. Using this information, he formulated a methodology to determine how much compensation was due these workers and how much they were underpaid. It then became the duty and sole province of the Commissioner to weigh the evidence and determine the credibility of witnesses *(see, Matter of Collins v Codd,* 38 NY2d 269, 271). While opinions might differ as to the reliability of the testimony if reviewed in a vacuum, the investigator's testimony, although in conflict with petitioners' witnesses, was indeed supported by numerous other witnesses and other evidence.

Petitioners nevertheless argue that the re-creation of their records to add workers to the payroll and compute underpayments was arbitrary and speculative. We cannot agree. Although petitioners are experienced public contractors and were aware of the prevailing wage statutes, their records were so incomplete that it was not possible to bring them to the statutorily mandated standard of record keeping. The remedial nature of the enforcement of the prevailing wage statute *(see,* Labor Law art 8) and its public purpose of protecting workmen *(see, Austin v City of New York,* 258 NY 113, 117; *Matter of Armco Drainage & Metal Prods. v Moore,* 285 App Div 236, 239) entitled the Commissioner to make just and reasonable inferences in awarding damages to employees even while the results may be approximate *(see, Anderson v Mt. Clemens Pottery Co.,* 328 US 680, 687; *Nowicki v Forward*

*Assn.*, 281 App Div 5, 7). When an employer fails to keep accurate records as required by statute, the Commissioner is permitted to calculate back wages due to employees by using the best available evidence and to shift the burden of negating the reasonableness of the Commissioner's calculations to the employer *(see, Anderson v Mt. Clemens Pottery Co.*, 328 US 680, 688, *supra)*. In such a situation the amount and extent of underpayment is a matter of just and reasonable inference and may be based upon the testimony of employees *(see, Nowicki v Forward Assn.*, 281 App Div 5, 7, *supra)*. The public policy of providing protection to workers is embodied in the statute which is remedial and militates against creating an impossible hurdle for the employee *(see, Matter of Anderson v Mt. Clemens Pottery Co., supra*, at 687). Were we to hold otherwise, we would in effect award petitioners a premium for their failure to keep proper records and comply with the statute. That result should not pertain here.

Finally, we find ample basis in the record to affirm the Commissioner's finding that the violation of the prevailing wage rate law was willful. It is not necessary to find the equivalent of criminal intent; rather it is sufficient if a petitioner acted knowingly, intentionally or deliberately *(Matter of Cam-Ful Indus. [Roberts]*, 128 AD2d 1006). Petitioners knew, or should have known, that employees on the public work project were not being paid the prevailing wage rate and supplements and that their payroll records were not authentic. Because petitioners had previously performed public work projects and their officers were knowledgeable of the requirements of the prevailing wage law, their conduct on this project supports the finding of willfulness *(see, Gross Plumbing & Heating Co. v Department of Labor*, 133 AD2d 524).

Determinations confirmed, and petitions dismissed, without costs. Casey, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.