OPINION OF THE COURT
Bellacosa, J.
As a result of two 1986 determinations of willful violations of Labor Law § 220 issued by the Commissioner of Labor, the Hull Corporation has been debarred until August 1991 from bidding on or being awarded any public work contracts. Whether that debarment will continue through 1993 is the practical consequence stemming from two additional determinations by the Commissioner of Labor made in 1988. The legal issue on this appeal arises out of Hull’s article 78 proceeding challenging only the 1988 determinations of willfulness and the Commissioner’s postulate that contemporaneous and similar conduct on multiple public work contracts can be splintered into discrete determinations of willful failure to pay prevailing wages and supplements for debarment purposes (see, Labor Law § 220 [3]; § 220-b [3] [b]).
 Concluding that the issue is ripe for judicial review because under Labor Law § 220-b (3) (b) debarment occurs by operation of law upon a determination of a second willful failure to comply with article 8 of the Labor Law, we hold that — for the debarment penalty purpose only — Hull’s contemporaneous and similar conduct at issue provides the basis for a single willful determination. Thus, we reverse.
Petitioner-appellant Hull Corporation entered into three *478 public work contracts in 1984-1985. The first contract involved construction of an interchange along Route 790 in the Syracuse area (Syracuse contract). The second and third contracts involved highway construction work in the Utica area (Utica contracts). As a contractor, it was bound under Labor Law § 220 (3) and the contracts to pay the employees not less than the prevailing rate of wages and supplements in each employee’s trade or occupation in the locality where the project was located.
While Hull was performing these contracts, the Commissioner of Labor issued a redetermined wage schedule effective from July 1, 1985 to June 30, 1986. After Hull was notified that the new schedule was applicable to ongoing projects, it chose not to pay its employees the redetermined wages pending a challenge to the Commissioner’s authority to affect these three contracts. Hull established three private "escrow” accounts into which it deposited the respective wage differentials between the original and the redetermined schedules. The Commissioner’s redetermination power was ultimately upheld (Matter of General Bldg. Contrs. v Roberts, 118 AD2d 173 [1986], lv denied 68 NY2d 612), and Hull paid the "escrowed” money with interest to its employees.
Prior to the 1988 Utica contract determinations under review in this appeal, Hull was debarred for five years based on two 1986 determinations of willful violations, the second of which was based on the Syracuse contract (see, Matter of Hull-Hazard, Inc. v Roberts, 129 AD2d 348 [1987], affd 72 NY2d 900 [1988]; see, Matter of Hull-Hazard, Inc. v Roberts, 136 AD2d 872 [1988], mod 74 NY2d 710 [1989] [upheld Commissioner’s determination regarding Syracuse contract]). This debarment, set to expire in August of 1991, and its predicate 1986 determinations of willful violations are not under review here and Hull seeks no relief in that respect in this appeal.
However, in May 1988, the Commissioner issued two more orders and determinations finding Hull had willfully failed to pay the redetermined wage rate and supplements on its September 1984 and January 1985 Utica contracts. These contracts and administrative determinations are the essential subjects of this appeal. Hull’s petition challenges the multiple willful determinations based on its contemporaneous similar conduct only for debarment purposes, and does not challenge the Utica determinations themselves or the civil penalties or wage payments imposed thereunder.
*479 Initially, we must address the Appellate Division conclusion that judicial review is premature because the Commissioner has not yet rendered a new, formal or extended debarment order based on the two Utica contract willful violations (156 AD2d 985). We disagree.
The debarment provision of the Labor Law provides that "[w]hen final determinations have been rendered against a contractor * * * in two instances within [a] consecutive six-year period determining that such contractor * * * has wilfully [sic] failed to pay the prevailing rate of wages or to provide supplements * * * such contractor * * * shall be ineligible to submit a bid on or be awarded any public work contract with the state * * * for a period of five years from the second final determination” (Labor Law § 220-b [3] [b] [emphasis added]). The statute uses the compulsory term "shall”, and while the Commissioner may issue a separate debarment document (see, Garden State Brickface & Stucco Co. v Roberts, 121 AD2d 597, lv denied 69 NY2d 601), the legal force of the penalty is self-executing by statutory command as of the date of the second final determination of willful violation. The debarment penalty automatically forecloses Hull from bidding on and being awarded public work contracts by operation of statutory prescription (see, Matter of Dadson Plumbing Corp. v Goldin, 104 AD2d 346, 347, mod 66 NY2d 713). Thus, the Commissioner’s formal order of debarment may be viewed as a ministerial implementation of the juridical event, like the striking of an attorney’s name from the Roll of Attorneys after automatic disbarment for a felony conviction (Judiciary Law § 90).
The conclusion that debarment is automatic potentially affects the length of Hull’s debarment. If the May 1988 Utica contract determinations of double willful violations are considered to be discrete from the August 1986 Syracuse contract determination for debarment purposes — as the Commissioner declared and as Hull now disputes — then Hull’s debarment would by statute be automatically extended until May 1993. Resolution of the disputed legal question will thus "have an immediate practical effect on the conduct of the parties” (New York Pub. Interest Research Group v Carey, 42 NY2d 527, 530), and the matter is therefore ripe for judicial review.
Turning to the pivotal issue on the merits, we must resolve whether Hull’s contemporaneous similar conduct in violating the article 8 Labor Law prevailing wage and supplement *480 provisions in its performance of three contracts can be trifurcated into discrete determinations of willful violations under Labor Law § 220-b (3) (b) for debarment purposes.
The Commissioner’s two May 1988 orders and determinations concluded that Hull had willfully failed to pay its employees on the two Utica contracts the prevailing rate of wages and supplements to which they were entitled from August 1985 to March 1986. Previously, the Commissioner’s August 1986 order and determination had concluded, among other things, that Hull had willfully underpaid wages and supplements on the Syracuse contract during the period of August 1985 to July 1986. The Commissioner expressly rendered separate determinations for these three contracts, treating each as a separate willful violation for debarment purposes (Labor Law § 220-b [3] [b]). This compounding of the violation for the purpose of aggregating and inflicting the most severe administrative penalty — debarment from future bidding for five years — is not within the reach of the statute and our interpretations of it.
Labor Law § 220-b (3) (b) "clearly requires one final determination prior to the second final determination so as to establish knowing repetition as the predicate for a five-year suspension from bidding.” (Matter of Dadson Plumbing Corp. v Goldin, 66 NY2d, supra, at 715 [emphasis added].) In Dadson, where the contractor contemporaneously underpaid an employee on five separate ongoing contracts, we concluded that "knowing repetition” had not been established and there had been only a single final determination; thus, the contractor was not debarred (id. [emphasis added]).
In this case, Hull also acted contemporaneously with respect to all three contracts in relation to the same redetermined prevailing wage schedules. After the redetermined schedules were issued for the three contracts, Hull continued to pay wages under the prior schedule and established three "escrow” accounts. Hull abandoned its interim maneuver and paid the escrowed wages with interest to its employees on all three contracts after the Commissioner’s authority was upheld. Indeed, the Commissioner concedes on this appeal that Hull’s conduct regarding prevailing wages and supplements as to all three contracts was the same. To be sure, while the determinations in Dadson were issued simultaneously, the Syracuse and Utica determinations were issued at different times. However, the governing principle and rationale affect *481 ing the debarment sanction imposed for contemporaneous similar conduct are the same.
In the context of these facts involving contemporaneous similar conduct on multiple contracts violating article 8 of the Labor Law, we conclude that Dadson’s "knowing repetition” requirement should generally be deemed satisfied for debarment purposes only when the first determination precedes the conduct forming the basis for the second determination. Hull’s conduct relating to the two Utica contracts, under review here, occurred before the Commissioner determined Hull’s similar contemporaneous conduct violated the Syracuse contract. Thus, the Utica contracts cannot result in' two more willful determinations under Labor Law § 220-b (3) (b) because Hull could not and did not repeat the conduct after it had been determined by the Commissioner to be a violation. Hull’s conduct relating to the Utica contracts, involving only wages and supplements, cannot result in willful determinations separate and distinct from one another or from the August 1986 Syracuse contract determination in that respect for debarment purposes.
The separate timing of the Commissioner’s determinations cannot transform the similar conduct into "knowing repetition” of willful violations for debarment purposes. To hold otherwise would be to expand Labor Law § 220-b (3) (b) and allow the Department of Labor to separately and successively prosecute similar contemporaneous conduct merely to establish multiple determinations of willful violations to bring about automatic debarments. Dadson and the statute (Labor Law § 220-b [3] [b]) stand for the proposition that genuinely separate building blocks are needed to reach debarment; splitting a single block into pieces and piling them atop one another may not accomplish that feat.
We have emphasized that the debarment provisions are penal in nature (McKinney’s Cons Laws of NY, Book 1, Statutes § 273) and must be "strictly construed against the party seeking their enforcement and in favor of the person being proceeded against” (McKinney’s Cons Laws of NY, Book 1, Statutes § 271 [a]; see, Matter of Dadson Plumbing Corp. v Goldin, 66 NY2d, supra, at 715). Our interpretation of Labor Law § 220-b (3) (b) in Dadson and here that "knowing repetition” requires something repetitive and sequential is reasonable; on the other hand, administrative ratcheting of the type evident here would not be rational and, under the circumstances, it would be arbitrary and capricious.
*482 The remaining contentions have been examined but do not affect the precise issue and result in this case.
Accordingly, the judgment of the Appellate Division should be reversed, with costs, the petition granted and the matter remitted to Supreme Court, Onondaga County, with directions to remand to the Commissioner for new determinations in accordance with this opinion.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Judgment reversed, with costs, petition granted, and matter remitted to Supreme Court, Onondaga County, with directions to remand to the Commissioner for new determinations in accordance with the opinion herein.