■ In the Matter of BISTRIAN MATERIALS, INC., Respondent, v LINDA ANGELLO et al., Appellants, et al., Respondent. [747 NYS2d 97] —In a proceeding pursuant to CPLR article 78, inter alia, to review a determination of the New York State Department of Labor, dated May 25, 2001, debarring the petitioner from bidding on or being awarded public work contracts until June 6, 2005, the appeal, by permission, is from an order of the Supreme Court, Suffolk County (Mullen, J.), dated June 18, 2001, which granted the petitioner's motion, in effect, for a preliminary injunction enjoining, inter alia, enforcement of the determination.

Ordered that the order is reversed, on the law, with costs, and the motion is denied.

In June 2000, Patrick Bistrian, Jr., Inc. (hereinafter PBI), a nonparty, was debarred by the New York State Department of Labor (hereinafter the Department of Labor) from bidding on or being awarded a public contract or subcontract for a period of five years pursuant to Labor Law § 220-b (3) (b), the "prevailing wage law." As a result, the award to PBI of a contract for a public project at Lions Field in East Hampton was rescinded and rebid. One of the bidders on the rebid, but not the lowest

bidder, was the petitioner Bistrian Materials, Inc. (hereinafter BMI). BMI is owned by Patrick Bistrian III—the son of Patrick Bistrian, Jr., the owner of PBI. Subsequently, BMI was the lowest responsible bidder on a "Town-Wide Drainage Project" for the Town of Southampton.

On March 8, 2001, the Department of Labor notified BMI that it intended to debar BMI as being, inter alia, a substantially-owned affiliated entity of PBI within the meaning of Labor Law § 220-b (3) (b) and § 220 (5) (g). In notices dated March 8, 2001, and May 10, 2001, the Department of Labor set forth the basis for the intended debarment. After submissions and supplemental submissions by BMI in response, the Department of Labor, by determination dated May 25, 2001, debarred BMI. BMI thereafter commenced this CPLR article 78 proceeding to review the determination. In the order appealed from, the Supreme Court granted a preliminary injunction, inter alia, enjoining enforcement of the determination. We reverse.

In support of its application, BMI failed to demonstrate entitlement to the injunctive relief sought (see Matter of Long Is. Paneling Ctrs. v Osman, 286 AD2d 333; Melvin v Union Coll., 195 AD2d 447). In particular, BMI failed to demonstrate a likelihood of success on the merits.

At one time, Labor Law § 220-b applied only to a "person or corporation" that willfully failed to pay prevailing wages (L 1966, ch 320). In 1989, after the Court of Appeals held that a successor corporation could not be debarred under the statute (Matter of Hull-Hazard, Inc. v Roberts, 72 NY2d 900), the statute was amended to delete "person or corporation" and replace it with "contractor or subcontractor and/or its successor" (L 1989, ch 651, § 1; Mem of State Labor Dept, 1989 McKinney's Session Laws of NY, at 2232-2233). When this amendment proved inadequate, the scope of the statute was further expanded to encompass, inter alia, a "contractor, subcontractor, successor, or any substantially-owned affiliated entity of the contractor or subcontractor" (L 1998, ch 547, § 6). A "substantially owned-affiliated entity," codified in Labor Law § 220 (5) (g), was defined as, inter alia, "an entity which exhibits any other indicia of control over the contractor or subcontractor or over which the contractor or subcontractor exhibits control, regardless of whether or not the controlling party or parties have an identifiable or documented ownership interest. Such indicia shall include, power or responsibility over employment decisions, access to and/or use of the relevant entity's assets or equipment, power or responsibility over

contracts of the entity, responsibility for maintenance or submission of certified payroll records, and influence over the business decisions of the relevant entity." In signing this amendment into law, Governor Pataki, while acknowledging concern over the breadth of the definition, noted that such breadth was necessary "to ensure that the most nefarious violators do not choose a method of circumventing the law not yet contemplated to continue to engage in the activity sought to be proscribed by the bill" (Executive Mem, 1998 McKinney's Session Laws of NY, at 1477-1478).

In light of this background, it is clear that the Legislature intended Labor Law § 220-b to be read expansively to address the realities of a relationship between different contractors and/or subcontractors to determine whether one or more is a substantially-owned affiliated entity of the other. Here, BMI has not demonstrated a likelihood of success on its argument that the Department of Labor's determination that BMI was a substantially-owned affiliated entity of PBI was arbitrary and capricious (*see* CPLR 7803 [3]; *Matter of Pell v Board of Educ.,* 34 NY2d 222; *Matter of Lion Constr. Corp. v New York State Dept. of Labor,* 266 AD2d 394). Not only is there a close familial relationship between the owners of the corporations, but also, inter alia, the record sets forth evidence that BMI and PBI are located in the same building; that they share office equipment and a secretary; that BMI hired a former employee of PBI after PBI was debarred; that BMI and PBI are the named "insured" on several insurance policies, including ones covering equipment not owned by BMI; that BMI's workers' compensation insurance was limited, on its face, to "clerical office employees" and "executive officers"; and that, after PBI's debarment, several insurance policies formerly issued to PBI were reissued to BMI. Further and significantly, there is evidence that, prior to PBI's debarment, BMI's public contracts were limited to the provision of construction materials, BMI's primary business before PBI's debarment. The record indicates that it was only after PBI was debarred that BMI began bidding for contracts of the type formerly bid on by PBI, including the Lions Field project, which required significant and varied improvements to athletic facilities, comfort stations, and roadways, and the contract referenced in the order appealed from, which concerned a town-wide drainage project. Accordingly, a preliminary injunction should not have issued.

Finally, BMI failed to demonstrate a likelihood of success on its alternative argument that it was denied due process of law (*see Mathews v Eldridge,* 424 US 319; *Matter of Action Elec.*

*Contr. Co. v Riverso,* 287 AD2d 560). Thus, the grant of injunctive relief may not be affirmed on that basis. Ritter, J.P., Goldstein, Friedmann and Luciano, JJ., concur.