■ In the Matter of PEGASUS CLEANING CORPORATION et al., Appellants, v M. PATRICIA SMITH, as Commissioner of Labor, et al., Respondents. [905 NYS2d 666]—

Kavanagh, J. Appeal from a judgment of the Supreme Court (Ceresia, Jr., J.), entered March 5, 2009 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Commissioner of Labor finding, among other things, that petitioner Pegasus Cleaning Corporation underpaid its employees.

In September 1997, petitioner Pegasus Cleaning Corporation (hereinafter petitioner) entered into a two-year contract with the Office of General Services to provide janitorial services for a state office building and, pursuant to the terms of the contract, was required to pay its employees prevailing wages and supple-

ments (*see* Labor Law § 231).[1] In May 1998, the Department of Labor, in response to complaints it received from employees of petitioner, commenced an investigation into whether petitioner had been paying prevailing wages as required by this contract. More than seven years later, in February 2006, the Department completed its investigation and provided petitioner with an audit, which concluded that petitioner had underpaid its employees $190,178.66 in wages and supplements as required by the prevailing wage provision of the parties' contract.

A fair hearing was held in April 2007, which culminated in findings being rendered by a Hearing Officer to the effect that the amount of the underpayment was correctly calculated by the Department, petitioner's failure to make these payments was not deliberate and that petitioner, in addition to paying a 10% penalty based on the total of the underpayment, must reimburse its employees for the full amount due and owing plus 6% interest (*see* Labor Law § 235 [5] [b]).[2] After respondent Commissioner of Labor adopted the Hearing Officer's findings and recommendations, petitioner and its primary shareholder, petitioner Violet Lewis, filed this CPLR article 78 proceeding seeking to annul the Commissioner's determination. Supreme Court dismissed the petition and petitioners now appeal.

Petitioners initially argue that they should not be required to make any payments reimbursing their employees for the amount owed because their ability to defend against the charges was seriously compromised by the time it took the Department to conduct this investigation and issue a final determination.[3] In that regard, petitioners claim that, by the time the fair hearing was conducted, Department officials who had approved the method that petitioner employed in computing the wages and supplements to be paid its employees pursuant to this contract were no longer in state employ and, as a result, were not available to testify on petitioners' behalf at the hearing. While such testimony would have, to some degree, supported petitioners' position at the hearing, any prejudice that may have resulted because these witnesses were not available to testify was greatly ameliorated by the Hearing Officer's finding in his final report that petitioner's account of its contacts with these officials was

---

1. The contract was extended through January 2003.

2. The Hearing Officer specifically recommended that petitioner not be required to pay interest on the amount underpaid for the period between January 1999 and October 2002 during which the Department had failed to take any action in regard to this investigation.

3. On this appeal, petitioners do not challenge the methodology used by the Department to determine the amount that should have been paid or the total amount of the underpayment.

credible, and that the "uncontroverted evidence is that [petitioner] presented a proposed 'benefit breakdown' prior to commencing work on the project and was left at that time to understand that its proposed supplemental benefit credit was acceptable" (see Matter of Corning Glass Works v Ovsanik, 84 NY2d 619, 624 [1994]; Matter of Cortlandt Nursing Home v Axelrod, 66 NY2d 169, 180 [1985]; Matter of Heller v New York State Tax Commn., 116 AD2d 901, 903-904 [1986]).

Petitioners also claimed that they should not be required to reimburse their employees for the full amount of the underpayment because they relied upon representations made by Department officials as to how the prevailing wage should be calculated. As a general rule, a government agency cannot be estopped from performing a duty that is a proper "exercise of its governmental function" (Matter of Amsterdam Nursing Home Corp. [1992] v Daines, 68 AD3d 1591, 1592 [2009]; see Notaro v Power Auth. of State of N.Y., 41 AD3d 1318, 1320 [2007]; Matter of Grella v Hevesi, 38 AD3d 113, 117 [2007]; Matter of Broome County Dept. of Pub. Transp. v New York State Div. of Human Rights, 220 AD2d 861, 861-862 [1995]). The fact that the advice petitioner received from Department officials concerning the calculation of the prevailing wage may have been erroneous does not constitute an exception to this well-established rule and cannot be the basis for barring the Department from performing this essential function (see Notaro v Power Auth. of State of N.Y., 41 AD3d at 1320; Matter of Grella v Hevesi, 38 AD3d at 117).

Petitioners also claim that petitioner only agreed to extend this contract because it was led to believe that the investigation had been completed and the Department had found that it was paying the prevailing wage. However, not only is this claim based entirely upon speculation but, more importantly, petitioners acknowledge that at no time did anyone from the Department ever notify petitioner that the investigation had been completed or that the matter had been resolved in its favor. In fact, after petitioner had conferred with Department officials regarding how the prevailing wage should be calculated, it received a letter from the Department dated May 14, 1999 to the effect that issues still existed with its payroll and additional information had to be provided before the investigation could be completed. Petitioner never responded to this request or provided any of the documents requested.

Petitioners also argue that petitioner's obligation to pay what is owed in back wages and supplements should be limited and not include payroll periods that occurred during the 46 months

that the Department allowed this investigation to linger and failed to take any meaningful steps to complete it. While the Department was undoubtedly remiss in the manner in which it conducted this investigation, and was largely responsible for the extended amount of time it took to complete it (*see* Labor Law § 220 [7]; *Matter of Nelson's Lamp Lighters v New York State Dept. of Labor*, 267 AD2d 937, 938 [1999], *lv denied* 94 NY2d 763 [2000]; *see also* State Administrative Procedure Act § 301), those failings, as previously noted, cannot serve to relieve petitioner of their contractual obligations to pay its employees the prevailing wage. Moreover, the Hearing Officer took note of the impact this delay had on petitioner and recommended that it not be required to pay any interest on the underpayments that occurred during this period.

Finally, petitioners also argue that since it has been found that petitioner's failure to pay the prevailing wage was neither willful nor deliberate, a civil penalty is not warranted and should not be imposed. Labor Law § 235 (5) (b) provides that a civil penalty not exceeding 25% of the total owed may be imposed and requires that, in "assessing the amount of the penalty, due consideration shall be given to the size of the employer's business, the good faith of the employer, the gravity of the violation, the history of previous violations of the employer, . . . any officer of the contractor or subcontractor who knowingly participated in the violation . . . and the failure to comply with recordkeeping or other non-wage requirements." Here, the Hearing Officer, in deciding to impose a 10% penalty—and not the statutory maximum—took into account that petitioner appeared to have made a good faith effort to comply with its obligations under the contract, but noted that the "underpayment of nearly $200,000 to 188 workers over a 4-year period is a very serious, if unintentional, violation," which has significant public policy implications. As a result, we cannot conclude that the penalty "was so disproportionate to the underlying offense as to be shocking to one's sense of fairness" (*Matter of Sarco Indus. v Angello*, 23 AD3d 715, 717 [2005]; *see Matter of Hull-Hazard, Inc. v Roberts*, 136 AD2d 872, 874 [1988]; *see also Matter of JMH, Inc. v New York State Liq. Auth.*, 61 AD3d 1260, 1262 [2009]; *Matter of KTD Enters. v New York State Liq. Auth.*, 205 AD2d 938 [1994]), and it will not be disturbed.

Mercure, J.P., Rose and Lahtinen, JJ., concur; Egan Jr., J., not taking part. Ordered that the judgment is affirmed, without costs. **[Prior Case History: 2009 NY Slip Op 30003(U).]**