*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 18, 2016                    521037
_____

In the Matter of CENTRAL CITY
    ROOFING CO., INC.,
                        Petitioner,

            v                              MEMORANDUM AND JUDGMENT

MARIO J. MUSOLINO, as Acting
    Commissioner of Labor,
                        Respondent.
_____

Calendar Date:  January 13, 2016

Before:  Peters, P.J., Garry, Egan Jr., Rose and Clark, JJ.

_____

        The Ward Firm, PLLC, Liverpool (Matthew W. Ward of
counsel), for petitioner.

        Eric T. Schneiderman, Attorney General, New York City (C.
Michael Higgins of counsel), for respondent.

_____

Rose, J.

        Proceeding pursuant to CPLR article 78 (initiated in this
Court pursuant to Labor Law §§ 220 and 220-b) to review a
determination of respondent finding, among other things, that
petitioner willfully failed to pay prevailing wages and
supplements.

        In May 2008, petitioner contracted with a school district
to install a new roof on a high school building.  Work on the
project commenced on June 30, 2008 and was completed in May 2009.
During that time period, petitioner paid its workers according to
the wage rate schedule included in the project specifications.
That schedule, however, was valid for the first day of the

project only.  A newly issued wage rate schedule for July 2008 to June 2009 superceded the one found in the project manual.  In March 2010, a local labor union filed a complaint with the Department of Labor (hereinafter DOL) claiming that petitioner failed to pay prevailing wages.  Following an investigation and a hearing, a Hearing Officer issued a report recommending that respondent find, among other things, that petitioner's use of the expired wage rate schedule constituted a willful failure to pay prevailing wages and supplements in violation of Labor Law article 8 (see Labor Law §§ 220 [3] [a], [d] [i] [1]; [7-a]; 220-b [2-a]).  Respondent adopted the Hearing Officer's findings and recommendations, and this proceeding ensued.

Notwithstanding petitioner's assertion that it had no intention of underpaying its workers, respondent's determination that petitioner willfully failed to pay prevailing wages is supported by substantial evidence.  While it must be shown that petitioner's failure to pay prevailing wages was more than purely accidental, "it is not necessary to prove an 'intent to defraud . . .; all that is required is proof that the employer knew or should have known that it was violating the prevailing wage laws'" (Matter of Murphy's Disposal Servs., Inc. v Gardner, 103 AD3d 1015, 1016 [2013], quoting Matter of Nash v New York State Dept. of Labor, 34 AD3d 905, 907 [2006], lv denied 8 NY3d 803 [2007]; see Matter of Scharf Plumbing & Heating v Hartnett, 175 AD2d 421, 422-423 [1991, Mercure, J., dissenting]; cf. Matter of Levin v Gallman, 42 NY2d 32, 33-34 [1977]).  Here, respondent's finding of willfulness was based upon the explicit notices regarding the timing of wage rate changes that appear in the expired schedule upon which petitioner relied.  The schedule unambiguously states that it is "effective from July 2007 through June 2008," and that "future copies of the annual determination are available on [DOL's] website."  In a separate paragraph, the schedule further states that "[t]he rate listed is valid until the next effective rate change or until the new annual determination which takes effect on July 1 of each year.  All contractors . . . are required to pay the current prevailing rates of wages and supplements."  We find that this language provides substantial support for respondent's conclusion that petitioner — an experienced contracting company with over three decades of experience performing public work projects — should

have known that the rate schedule had changed and, by not adjusting its payroll accordingly, willfully failed to pay prevailing wages to its workers (see e.g. Matter of Sarco Indus. v Angello, 23 AD3d 715, 716-717 [2005]; Matter of Lantry v State of New York, 12 AD3d 864, 867 [2004], affd 6 NY3d 49 [2005]; Matter of TPK Constr. Corp. v Hudacs, 205 AD2d 894, 895 [1994]).

We further find that respondent properly imputed its finding of willfulness against petitioner to Pyramid Roofing and Sheet Metal Co., Inc. as a "substantially owned-affiliated entity" (Labor Law §§ 220 [5] [g]; 220-b [3] [a]).  It is undisputed that the shareholders of both petitioner and Pyramid are members of the same family,[1] and the record reveals that petitioner essentially utilized workers hired by Pyramid as its own field staff.  Indeed, petitioner's vice-president admitted that, at the time of the project in question, petitioner had no laborers on its own staff, that it exclusively hired Pyramid's workers for this project and others, and that this employee-sharing arrangement was devised by James Pipines, the president of petitioner (see Matter of Bistrian Materials v Angello, 296 AD2d 495, 496-497 [2002]).

Next, while representatives of petitioner concede in their hearing testimony that petitioner improperly paid Ryan Ernestine at the roofer wage rate during the periods of time he spent operating a forklift, petitioner disputes respondent's determination that Ernestine is entitled to back pay at the higher operator rate for two hours per day that he worked on the project.  However, inasmuch as petitioner failed to produce any documentation of the time that Ernestine spent operating the forklift, respondent was "entitled to make just and reasonable inferences and use other evidence to establish the amount of underpaid wages, even though the results may be approximate" (Matter of Ramirez v Commissioner of Labor of State of N.Y., 110

---

[1]  Stella Pipines is the sole shareholder of Pyramid.  Her sons, James Pipines and William Pipines, are shareholders and corporate officers of petitioner; two more children of Stella Pipines are also shareholders of petitioner, but do not appear to be actively involved in its business operations.

AD3d 901, 901 [2013]; see Matter of D & D Mason Contrs., Inc. v Smith, 81 AD3d 943, 944 [2011], lv denied 17 NY3d 714 [2011]; Matter of Mid Hudson Pam Corp. v Hartnett, 156 AD2d 818, 820 [1989]).  In doing so, respondent considered sharply conflicting testimony regarding Ernestine's hours and discredited Ernestine's statements to a DOL investigator that he spent seven hours per day as an operator.  Respondent also discredited testimony from representatives of petitioner and Pyramid who stated that Ernestine used the forklift for no more than 15 to 20 minutes per day.  Instead, finding the school district's director of facilities "to have a more independent perspective," respondent relied upon his testimony estimating that Ernestine operated the forklift approximately two hours per day.  Insofar as petitioner argues that the testimony of petitioner's and Pyramid's representatives was more credible, we note that "this Court may not weigh conflicting evidence or substitute its own judgment, and if, as here, the findings turn on the credibility of witnesses, we may not substitute our perceptions for those of the agency" (Matter of Suchocki [St. Joseph's R.C. Church—Commissioner of Labor], 132 AD3d 1222, 1224 [2015] [internal quotation marks and citations omitted]; see Matter of Ramirez v Commissioner of Labor of State of N.Y., 110 AD3d at 901-902; Matter of Scuderi v Gardner, 103 AD3d 645, 647 [2013]).  Accordingly, petitioner has failed to satisfy its burden of establishing that respondent's determination regarding the amount of Ernestine's underpaid wages was unreasonable.

Turning to petitioner's contentions regarding the interest and penalties assessed by respondent, petitioner first argues that respondent abused his discretion by requiring it to pay 16% interest on its underpayment of wages.  We find this argument to be without merit, however, inasmuch as respondent is obligated to apply the statutory rate of interest to any order directing payment of willfully underpaid wages and supplements (see Labor Law §§ 220 [8]; 220-b [2] [c]; Banking Law § 14-a [1]; Matter of CNP Mech., Inc. v Angello, 31 AD3d 925, 928 [2006], lv denied 8 NY3d 802 [2007]).  We further disagree with petitioner's alternative argument that approximately two years of accrued interest should be abated due to delays in these proceedings caused by DOL.  The record reveals that a significant period of delay was attributable, at least in part, to petitioner's

inaction in response to various meetings with and correspondence from DOL.  Moreover, the record does not provide any basis for us to conclude that the delays arguably attributable to DOL were either unreasonable or unfair (see Matter of Pascazi v Gardner, 106 AD3d 1143, 1145-1146 [2013], appeal dismissed 21 NY3d 1057 [2013], lv denied 22 NY3d 857 [2013]; compare Matter of CNP Mech., Inc. v Angello, 31 AD3d at 928-929).

We reach a different conclusion regarding respondent's imposition of an additional 25% civil penalty — the maximum allowed by statute (see Labor Law § 220 [8]).  In determining the amount of the penalty, respondent must consider "the size of the employer's business, the good faith of the employer, the gravity of the violation, the history of previous violations and the failure to comply with recordkeeping or other non-wage requirements" (Labor Law § 220 [8]; see Matter of Sarco Indus. v Angello, 23 AD3d at 717).  While we agree with respondent that petitioner's willful failure to pay prevailing wages to 26 employees and its misclassification of Ernestine's hours worked as a forklift operator are serious violations, we also note respondent's finding that the individuals involved had no actual knowledge of the violations.  Nor does our review of the record indicate that petitioner's actions were motivated by bad faith.  Furthermore, prior to this case, petitioner had no history of willful failures to pay prevailing wages, despite performing public work projects since 1979.  Under the circumstances presented here, we find that respondent's imposition of the maximum penalty allowed by law must be annulled, as it is so disproportionate to the underlying offenses that it shocks one's sense of fairness (compare Matter of Pegasus Cleaning Corp. v Smith, 73 AD3d 1328, 1331 [2010], lv denied 15 NY3d 714 [2010]).

Peters, P.J., Garry, Egan Jr. and Clark, JJ., concur.

ADJUDGED that the determination is modified, without costs, by annulling so much thereof as imposed upon petitioner a civil penalty of 25%; matter remitted to respondent for reconsideration of a civil penalty not inconsistent with this Court's decision; and, as so modified, confirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court