Matter of National Bldg. & Restoration Corp. v New York State Dept. of Labor (2025 NY Slip Op 02247)

Matter of National Bldg. & Restoration Corp. v New York State Dept. of Labor

2025 NY Slip Op 02247

Decided on April 17, 2025

Appellate Division, Third Department

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 17, 2025

CV-23-1528

[*1]In the Matter of National Building & Restoration Corp. et al., Petitioners,
v
New York State Department of Labor et al., Respondents.

Calendar Date:February 20, 2025

Before: Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and McShan, JJ.

Coughlin & Gerhart, LLP, Binghamton (Joseph J. Steflik Jr. of counsel), for National Building & Restoration Corp. and others, petitioners.
Bond, Schoeneck & King, PLLC, New York City (Jason F. Kaufman of counsel), for National Construction Services, Inc., petitioner.
Letitia James, Attorney General, New York City (Seth Kupferberg of counsel), for respondents.

Lynch, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Labor Law §§ 220 and 220-b) to review a determination of respondent Commissioner of Labor finding that petitioners willfully failed to pay prevailing wages and supplements.
In July 2009, respondent Department of Labor (hereinafter DOL), Bureau of Public Work, received a complaint from a laborer on a public works project alleging that the project's contractor — petitioner National Building & Restoration Corp. (hereinafter NBRC) — was not paying him the statutorily prescribed prevailing wage (see Labor Law article 8 et seq.). The Bureau opened an investigation and, based upon information obtained during the course thereof, also began investigating whether NBRC had made prevailing wage underpayments on eight other public works projects between 2008 and 2010. In 2015, following a lengthy investigation, DOL sent a notice of hearing to NBRC and its alleged corporate officers, i.e., petitioners Joseph K. Salerno and his son, Joseph K. Salerno II (hereinafter collectively referred to as petitioners), alleging prevailing wage violations on each of the nine projects [FN1] and scheduling a hearing on the matter (see Labor Law §§ 220 [8]; 220-b [2] [c]). The hearing commenced in 2016, with testimony taken over several nonconsecutive days spanning through December 2018. On the December 10, 2018 hearing date, DOL elicited testimony that certain payroll records produced during the investigation were issued by a different corporate entity, i.e., petitioner National Construction Services, Inc. (hereinafter NCS). When challenged about the relevance of such testimony, DOL explained that it was material as to whether NCS was a "substantially owned-affiliated entity" of NBRC, which could be held financially liable for any penalty imposed upon a finding of prevailing wage violations (Labor Law § 220 [5] [g]; see Labor Law § 220-b [3] [b] [1]).
In an amended notice of hearing dated April 23, 2019, DOL added a claim against NCS, alleging that it was a substantially owned-affiliated entity of NBRC as defined in Labor Law § 220 (5) (g). Over NCS' objection, the hearing continued on several dates, concluding in September 2021. By Amended Report and Recommendation dated July 24, 2023, respondent Hearing Officer found violations of the prevailing wage law on each project at issue, that the violations were willful and both Salerno and Salerno II knowingly participated in the willful violations, that NBRC falsified payroll records and engaged in illegal wage-kickbacks, and that NCS was a substantially owned-affiliated entity of NBRC that could be held to account for the penalty imposed. The Hearing Officer recommended that petitioners be required to pay interest on the total underpayment for each project at a rate of 16% per annum. However, given the delay in the proceeding attributable, in part, to DOL's belated addition of NCS as a party, the Hearing Officer recommended tolling the accrual of interest for [*2]a period of six years. The Hearing Officer also recommended that NBRC be assessed a civil penalty in the amount of 25% of the underpayment and interest due. Respondent Commissioner of Labor adopted the Hearing Officer's recommendations and, due to the affirmed findings that NBRC had falsified payroll records and engaged in illegal kickbacks, DOL issued a debarment letter on July 21, 2023 advising that NBRC and NCS were, by operation of law, prohibited from bidding on future public works projects for a period of five years (see Labor Law § 220-b [3] [b] [1]). Petitioners commenced this CPLR article 78 proceeding challenging the Commissioner's determination.[FN2]
We begin by addressing petitioners' procedural arguments. Without specifying a statute of limitations that governs the claim against NCS, petitioners argue that, by the time the claim was interposed against NCS, "any conceivable statute of limitations had run." Upon a careful examination of Labor Law article 8, we find petitioners' argument unavailing.
Labor Law article 8 vests DOL with broad enforcement authority to investigate and remedy violations of the prevailing wage law (see Labor Law §§ 220, 220-b, 223). Pertinent here, Labor Law § 220-b (2) (a) (1) provides, in relevant part, that when DOL receives a complaint from an interested person "alleging unpaid wages or supplements due for labor performed on a public improvement" and the labor is alleged to have been performed "within the two-year period immediately preceding the date of the filing of said complaint," DOL "shall immediately so notify the financial officer of the civil division interested" and shall direct a contracting public agency to withhold funds earned or due to the contractor pending an investigation into the matter (see Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor, 97 NY2d 256, 260-261 [2002]). Labor Law § 220-b (2) (c) contains a look-back period limiting the scope of DOL's investigation to work performed within the three years preceding the complaint's filing "or the commencement of the investigation on [the Comptroller's] own initiative." Although petitioners cite the two- and three-year time frames set forth in Labor Law § 220-b in support of their argument that the claim against NCS was time-barred, these time limitations speak to the filing of a complaint and the look-back period for an ensuing investigation. Neither provision speaks to a time frame within which DOL must file a notice of charges after its investigation has concluded (see generally Jones v Cattaraugus-Little Val. Cent. Sch. Dist., ___ NY3d ___, 2025 NY Slip Op 01007, *2 [2025] ["(A) statute of limitations is a law that bars claims after a specified period" (internal quotation marks, brackets and citation omitted)]). In fact, no such time frame is specified in Labor Law § 220-b, which merely states that DOL's investigation must be "expeditiously conducted" and that, at the conclusion thereof, a notice shall be served personally [*3]or by mail on all interested persons, who shall have the opportunity to be heard at the ensuing administrative hearing (Labor Law § 220-b [2] [c]).
Labor Law § 220 contains parallel procedures allowing DOL to remedy violations of the prevailing wage law outside of the withholdings context described above (see Palmer Constr. v Hines, 154 Misc 2d 248, 249-250 [Sup Ct, Albany County 1992]). In that regard, Labor Law § 220 (7) permits DOL to commence a compliance investigation upon receiving a verified complaint, or on its own initiative, to "determine whether the contractor or a subcontractor has paid the prevailing rate of wages and prevailing practices for supplements." We are mindful that Labor Law § 220 (7) requires a determination to be made within six months from the date of the complaint or from the date that a compliance investigation is commenced by DOL on its own initiative; however, that six-month time frame is "directory, not mandatory" (Giant Supply Corp. v City of New York, 248 AD2d 231, 233 [1st Dept 1998] [internal quotation marks and citation omitted]). There are also no specified deadlines set forth in Labor Law article 8 governing when a claim against a substantially owned-affiliated entity must be filed by DOL after the investigation. The three-year time limitation enumerated in Labor Law article 8 pertaining to recovery against substantially owned-affiliated entities concerns a private right of action by a complainant to recover established prevailing wage underpayments from that entity after the administrative order finding a violation of the prevailing wage law has been issued (see Labor Law § 220-b [3] [a]). While Labor Law §§ 220 (8) and 220-b (2) (c) both provide that the administrative hearings contemplated under those sections shall be conducted "expeditiously," and the belated addition of NCS as a respondent unquestionably delayed the resolution of the matter, that temporal directive did not constitute a statute of limitations precluding DOL from joining NCS as a party. Stated succinctly, petitioners have not established that the claim against NCS was time-barred.
Distinct from the statute of limitations question is whether adding NCS as a respondent so late in the administrative proceeding violated its due process rights. As a general rule, parties accused of wrongdoing in administrative proceedings must be given fair notice of the accusations made against them and an opportunity to be heard (see State Administrative Procedure Act § 301 [2] [b], [c]; Labor Law §§ 220 [8]; 220-b [2] [c]; Matter of Executive Cleaning Servs. Corp. v New York State Dept. of Labor, 193 AD3d 13, 16 [3d Dept 2021]). However, "the requirements of due process in administrative cases are not as exacting as they are in criminal cases" (Matter of Mandelstam v McDonald, 229 AD3d 912, 916 [3d Dept 2024] [internal quotation marks, brackets, ellipsis and citations omitted]). This is particularly so in the case of an enforcement proceeding under the prevailing [*4]wage law, which has its genesis in the NY Constitution and implicates important public policy interests (see Matter of Cayuga-Onondaga Counties Bd. of Coop. Educ. Servs. v Sweeney, 89 NY2d 395, 403 [1996] ["(P)revailing wage enforcement proceedings under Labor Law § 220 constitute instances where the public interests in their resolution on the merits override (an entity's) interest in receiving timely notice before commencement of an action" (internal quotation marks and citation omitted)]). Under DOL's regulations, a notice of hearing shall be personally served or mailed to the respondent, "[w]henever possible, . . . at least 30 days prior to the date of the hearing" (12 NYCRR 701.4 [c]; see Labor Law § 220 [8]; see also Labor Law § 220-b [2] [c]). Although the notice must contain a "statement of the charges, including matters raised and the issue(s) to be determined, . . . nothing shall preclude the consideration at the hearing of relevant issues not raised in the notice, in a manner consistent with [the] [r]espondent's right to respond to such issues" (12 NYCRR 701.4 [a] [4]).
The addition of NCS as a respondent to the administrative proceeding was indisputably delayed. And yet, it is important to recognize that Salerno II — NCS' sole shareholder — was named in and served with a copy of the original Notice of Hearing in 2015, which contained a detailed statement of charges against NBRC and specified that the hearing would cover several issues, including the willfulness of any established prevailing wage violation and "[a]ny other issues raised by the testimony and evidence at the hearing." Although DOL arguably should have formally added NCS as a respondent earlier in the administrative proceeding and its failure to do so delayed the "expeditious[ ]" resolution of the matter (Labor Law §§ 220 [8]; 220-b [2] [c]), no defined prejudice resulted from the delay. That is particularly so given that there are no factual allegations of any wrongdoing against NCS, the sole issue being whether its relationship with NBRC made it a "substantially owned-affiliated entity." Moreover, the Hearing Officer gave NCS extensive time to prepare a defense by adjourning the proceedings to enable a review of the evidence and testimony adduced to date, as well as to recall and cross-examine witnesses. By adopting the Hearing Officer's recommendations in full, the Commissioner accounted for the prolonged nature of the proceeding by tolling the accrual of interest for six years. In these circumstances, NCS had a full and fair opportunity to defend against the claim that it was a substantially owned-affiliated entity that could be held to account for the penalty imposed, and we cannot conclude that its due process rights were violated by the delayed notice (see Matter of Alca Indus. v McGowan, 258 AD2d 704, 705 [3d Dept 1999], lv denied 93 NY2d 807 [1999]; Matter of Baywood Elec. Corp. v New York State Dept. of Labor, 232 AD2d 553, 554 [2d Dept 1996]). Petitioners' additional [*5]procedural argument that DOL "has deprived [them] of their constitutional right to a jury trial," finds no support in the statutory language of Labor Law § 220 (8), which expressly provides that "[t]he fiscal officer in such hearing . . . shall determine the issues raised thereon." To the extent petitioners more generally challenge the constitutionality of the Legislature's failure to provide for a jury trial in a prevailing wage enforcement proceeding, any such argument is not adequately preserved for review.
We find no basis to disturb the merits of the Commissioner's determination. Where, as here, an administrative determination is made after an evidentiary hearing required by law, it must be supported by substantial evidence (see CPL 7803 [4]). "Substantial evidence is a minimal standard that requires less than the preponderance of the evidence and demands only the existence of a rational basis in the record as a whole to support the findings upon which the determination is based" (Matter of C & C Tobacco/Chuck's Gas Mart, Inc. v Tompkins County Whole Health, 233 AD3d 1237, 1238 [3d Dept 2024] [internal quotation marks and citations omitted]). Upon reviewing the record, we readily conclude that substantial evidence supports the Commissioner's findings in full.
Regarding the finding that NCS was a substantially owned-affiliated entity of NBRC, Labor Law § 220 (5) (g) provides, in pertinent part, that such an entity is one "which exhibits [an] indicia of control over the contractor or subcontractor [alleged to have violated the prevailing wage law] or over which the contractor or subcontractor exhibits control, regardless of whether or not the controlling party or parties have any identifiable or documented ownership interest." "Such indicia shall include, power or responsibility over employment decisions, access to and/or use of the relevant entity's assets or equipment, power or responsibility over contracts of the entity, responsibility for maintenance or submission of certified payroll records, and influence over the business decisions of the relevant entity" (Labor Law § 220 [5] [g]). To the extent petitioners rely on Matter of Hull Corp. v Hartnett (77 NY2d 475 [1991]) for the contention that debarment under Labor Law § 220-b (3) (b) requires repetitive violations, that reliance is misplaced. The statute was amended subsequent to Hull Corp. and allows for debarment in an instance, as here, involving "falsification of payroll records or the kickback of wages or supplements" (Labor Law § 220-b [3] [b] [1]).
DOL presented evidence that NCS was incorporated as an entity in May 2011, while the investigation into NBRC was ongoing, and that Salerno II was NCS' sole shareholder. Although Salerno denied that Salerno II was also an officer of NBRC, there was proof from which a contrary conclusion could be drawn, including evidence that Salerno II played a significant managerial role in NBRC's business dealings during the relevant time frame. There [*6]was also evidence that, after NCS' incorporation, the two entities interchanged employees and shared financial statements, NCS made "long-term" loans to NBRC "with no set terms for repayment," and NCS agreed to indemnify the surety of any project bond for which NBRC applied. Emphasizing the foregoing evidence and the circumstances of NCS' incorporation, Stephen Barber, a DOL investigator, opined that it "look[ed] like" NCS was formed "in order to take over the business" of NBRC should it be debarred. The foregoing proof, coupled with the familial relationship underlying the two entities, provides substantial evidence to support the finding that NCS was a substantially owned-affiliated entity of NBRC within the meaning of Labor Law § 220 (5) (g) (see Matter of Central City Roofing Co., Inc. v Musolino, 136 AD3d 1186, 1188 [3d Dept 2016]; Matter of Bistrian Materials v Angello, 296 AD2d 495, 497 [2d Dept 2002]).
Substantial evidence also supports the findings of prevailing wage violations on each project at issue, that the violations were willful, that Salerno and Salerno II knowingly participated in the violations, and that petitioners falsified payroll records. In addition to extensive testimony and documentation establishing prevailing wage underpayments (see Labor Law § 220 [3] [a]), the administrative record contains an August 2009 memo to "all employees" in which Salerno acknowledged as much, explaining that an "adjustment check" would be issued "due to an error in our Bookkeeping Department" regarding changes in rates and benefits in different counties and locations. Even accepting the memo's framing of the underpayments as a simple mistake, "[n]o intent to defraud is necessary to prove a willful violation; all that is required is proof that the employer knew or should have known that it was violating the prevailing wage laws" (Matter of Nash v New York State Dept. of Labor, 34 AD3d 905, 907 [3d Dept 2006], lv denied 8 NY3d 803 [2007]). This is not the case of an inexperienced contractor who had never before bid on a public works project. Petitioners had extensive experience with these types of contracts, knew that the rates were statutorily prescribed on such projects and should have been aware that the rate schedules were subject to change. Moreover, several employees testified that they were directed to "cash the [adjustment] check and give the money back" if they wanted to keep their jobs and that they were actively discouraged by petitioners from keeping independent records of their work. The foregoing evidence amply supports a finding that the prevailing wage violations were willful (see id.; Matter of Marangos Constr. Corp. v New York State Dept. of Labor, 216 AD2d 758, 760 [3d Dept 1995]). There is also substantial evidence supporting the determination that both Salerno and Salerno II knowingly participated in willful violations and that petitioners falsified payroll records by failing to classify employees based on the nature of the [*7]work performed (see Matter of Alca Indus. v McGowan, 258 AD2d at 705). Contrary to petitioners' contention, the substantial discrepancies in the information set forth in NBRC's certified payroll records and the information provided by employees to Bureau investigators during the course of the investigation — some of which was confirmed by the investigators' own observations — provided a reasonable basis to disregard the information contained in the payroll records when calculating the total amount of underpayments (see Matter of Scuderi v Gardner, 103 AD3d 645, 647 [2d Dept 2013]). Based upon the finding that petitioners falsified payroll records and engaged in illegal kickbacks, the debarment of both NBRC and NCS — as a substantially owned-affiliated entity — was also authorized (see Labor Law § 220-b [3] [b] [1]).
Nor is there any basis to disturb the penalty imposed for the violations, which was not "so disproportionate to the underlying offenses as to be shocking to one's sense of fairness" (Matter of Pegasus Cleaning Corp. v Smith, 73 AD3d 1328, 1331 [3d Dept 2010] [internal quotation marks and citation omitted], lv denied 15 NY3d 714 [2010]). A contractor who has violated the prevailing wage law may be required to pay the wages or supplements due with interest, along with a fine of up to 25% of the total amount owed (see Labor Law § 220 [8]). "In assessing the amount of the penalty, due consideration shall be given to the size of the employer's business, the good faith of the employer, the gravity of the violation, the history of previous violations and the failure to comply with recordkeeping or other non-wage requirements" (Labor Law § 220 [8]). Given the circumstances of this case, involving a contractor who was previously found to have willfully violated the prevailing wage law, continued to do so on several additional public construction contracts, and was found to have falsified payroll records, the 25% penalty imposed does not shock the conscience (see Matter of Scuderi v Gardner, 103 AD3d at 648; Matter of R.I., Inc. v New York State Dept. of Labor, 72 AD3d 1098, 1099-1100 [2d Dept 2010], lv denied 17 NY3d 703 [2011]; compare Matter of Central City Roofing Co., Inc. v Musolino, 136 AD3d at 1189-1190). Petitioners' remaining contentions, to the extent not expressly addressed, have been considered and found unavailing.
Garry, P.J., Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: NBRC was previously found to have willfully violated the prevailing wage law and to have falsified payroll records in connection with a public works construction project undertaken in the 1990s. As a result, it was prohibited from bidding on future public works projects for a period of five years ending in September 2003 (hereinafter referred to as debarment) (see Labor Law § 220-b [3] [b] [1]). The Commissioner of Labor's willful violation and falsification of payroll records findings were confirmed by the Appellate Division, Fourth Department (see Matter of National Bldg. & Restoration Corp. v McGowan, 261 AD2d 879, 879 [4th Dept 1999]).

Footnote 2: This Court denied petitioners' request for a preliminary injunction staying enforcement of the Commissioner's determination pending determination of the proceeding (2023 NY Slip Op 74358[U] [3d Dept 2023]).